# CHARLESTON

### HUTCHINSON *v*. UNITED STATES EXPRESS COMPANY.

Submitted September 5, 1907. Decided December 10, 1907.

1, CARRIERS—*Express Company—Liabilities*.

Being common carriers, and, as such, insurers of property entrusted to them for shipment, express companies are liable as insurers until after they have performed all that the law or the special contract of shipment has enjoined upon them. (p. 131.)

2. SAME.

Such insurance is not primary or special in its nature, but only incidental to the contract of carriage and neither begins earlier nor continues longer than is necessary to secure faithful and efficient execution of the contract of carriage. (p 132.)

3 SAME—*Delivery*,

Ordinarily, an express company must make delivery of goods or packages, carried by it, to the consignee in person at his place of business or residence, or to some person authorized to receive the same, before its liability as a common carrier and insurer thereof ceases. (p. 133.)

4. SAME—*Special Agreement*.

But the general rule, respecting the place and mode of delivery, may be modified or set aside by usage or special agreement, under which delivery may be made at the express office or agency; and the duty of the carrier in the premises is then measured by the usage or custom or the terms of the special agreement. (p. 133.)

5. SAME—*Notice of Arrival*.

Liability as carrier for a package carried to a point at which the established practice is, to make deliveries at the express office

or wareroom, on application for the goods, pursuant to notice of their arrival, given by mail, does not terminate until a reasonable time, allowed for removal after the giving of the notice, has elapsed. (p. 133.)

6. SAME—*Failure to Give Notice.*

If the duty to give such notice be omitted and the goods are lost by reason of a cause, other than one of those for which the law makes an exception in favor of the carrier, such as an act of God, or the like, the carrier is generally held to accountability as an insurer. (p. 134.)

7. SAME—*Liability as Warehouseman—Loss of Package—Liability.*

But, if failure to mail the notice, when such is the adopted mode of giving it, is not the proximate cause of the delay in removing the package, and the loss would have occurred if it had been mailed, and sufficient time has elapsed for the receipt thereof and removal of the goods, if one had been mailed, and the consignee had exercised reasonable diligence, the carrier is liable as warehouseman only. (p. 135.)

8. SAME —*Notice.*

A consignee who did not call for his mail and would not have received notice of the arrival of his package at an express office, at which deliveries are made only at the office after notice by mail, cannot hold an express company liable as carrier, for a package which arrived at 4:30 P. M. on Saturday and remained in the office until the following Monday night, when it was stolen, without fault or negligence on the part of the company. (p. 136.)

9. TRIAL—*Demurrer to Evidence.*

When the practice, on the part of an express company at a particular office thereof, to make deliveries only at the office after mailing notice of arrival of packages, is not controverted, and the plaintiff testifies to such practice, respecting consignments to himself, his testimony affords sufficient ground, in the evidence, for an inference that the usage exists, to take the case from the jury, as to that question, by a demurrer to evidence. (p. 138.)

10. WAREHOUSEMAN—*Negligence.*

The fact that a building in which a warehouseman stores goods is not burglar-proof, is not evidence of negligence on his part, in an action against him for their loss by theft. (p. 138.)

11. CARRIERS—*Loss of Goods—Negligence.*

Leaving an express package in the freight room of a railway station, at which the express office is maintained, instead of in a room thereof in which such packages are usually placed, neither continues or extends liability as carrier, nor amounts to negligence as warehouseman. (p. 138.)

Error to Circuit Court, Braxton County.

Action by H. B. Hutchinson against the United States Express Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

HALL BROTHERS, for plaintiff in error.

HAYMOND & FOX, for defendant in error.

POFFENBARGER, JUDGE:

In an action pending in the circuit court of Braxton county, on appeal from a judgment of a justice's court, in which H. B. Hutchinson was plaintiff and the United States Express Company defendant, for the recovery of $128.60, the value of a package of furs, stolen from the express company, a demurrer to the evidence was sustained and judgment rendered for the defendant, of which Hutchinson complains here.

Hutchinson, a dealer in furs for a number of years, residing in the vicinity of Cogar, a town in Braxton county, frequently, if not generally, sent out through the country one or more buyers who bought furs at such prices as could be agreed upon and turned them over to him at certain fixed prices, retaining the difference as compensation for the service. These buyers graded the pelts according to quality and shipped them by express to him at Cogar, and if the packages so shipped were small and of little value, he took them from the express office, but if they were of considerable size, he regraded and repacked them for the market and consigned them to a dealer in New York, without removing them from the express office premises. Deliveries were never made to him by the express company, but it was the practice to notify him by mail of the arrival of packages. The furs for the value of which this action was brought had been collected by B. F. Blake, who resided on Hutchinson's farm, and by him delivered to the express messenger on the train at a place called Carl Siding, on Saturday, February 4, 1905, consigned to Hutchinson at Cogar. Blake took passage on the same train for the same place, and, on alighting from the train at Cogar, saw the package of furs. This was after 4 o'clock, P. M., of that day. No notice of the

arrival of the package was given to Hutchinson by the express company and he knew nothing of it, until late Monday evening, February 6th, when Blake came to his house and informed him of the fact. Had notice been given him by mail, it would probably have been received at about the same time. That Monday was a bad stormy day, the ground being covered with a heavy, soft, melting snow, and the stream lying between Hutchinson's place and Cogar somewhat swollen. He probably would not have called for the package on that day, had he been aware of its arrival. On the next day, he and Blake together went to Cogar and found that, on the preceding night, the railway station in which the express office was, and in the freight room of which the package had been left, had been burglarized and the package stolen. It further appears from the testimony of Hutchinson himself that, had he found the package there, he would not have taken it away, but would have regraded it and immediately shipped it to New York, it being one of considerable size and value.

Whether, at the time the package was taken, it was in the hands of the express company as common carrier, or merely as warehouseman, is a question of the gravest importance. A common carrier is exempted from liability for loss of goods, entrusted to it for carriage, in only a few instances, and, subject to these exceptions, it is an insurer of them to the extent of their value. Ordinarily, it can be relieved only on the ground of loss or damage by act of God, *vis major* or inevitable accident. These are things against which prudence and care cannot avail, and, for that reason, the law exonerates common carriers from liability for loss attributable to them. Moore on Common Carriers pp. 219, 224, inclusive; Hutchinson on Carriers section 265; 6 Cyc. 376, 377; 5 Am. & Eng. Ency. Law 233. The exceptions are classified by Hutchinson as follows: (1) Those arising from what is known as the act of God; (2) those caused by the public enemy; (3) those arising from the act of the public authority; (4) those arising from the act of the shipper; and (5) those arising from the inherent nature of the goods. Loss by theft or robbery is not within any of these exceptions. "The common law liability of a com-

mon carrier, as an insurer of goods carried, did not extend to losses caused by the acts of public enemies; and the term enemies was understood to mean the public enemies of the country of the carrier, and not of the owner of the goods, and did not include thieves, robbers, or those engaged in mobs, riots or insurrections.'' Moore on Common Carriers 225; Hutchinson on Carriers, section 316. A much lighter degree of responsibility rests upon the carrier, after the function of carriage is deemed by the law to have been completed, and its relation to the property and the owner thereof, has assumed the character of that of mere custo- dian. After the goods have reached their destination and the lapse of a reasonable time, within which the owner is expected to remove them, the carrier's liability respecting them is measured by the legal principles applicable to ware- housemen. Under these principles, a loss not due to the negligence of the custodian or his failure to exercise such care and diligence for their safety, as an ordinarily prudent person would bestow upon his own property, is excusable. He is not an insurer, and not liable for loss by robbery or theft, if he has not contributed to it by negligence. *Berry v. Railroad Co.*, 44 W. Va. 538; Hutchinson on Carriers section 685; Moore on Common Carriers 181. These are general principles more directly applicable to such carriers as railway companies and steamship lines, which, ordinar- ily, do not make deliveries to the consignees, but, on the ar- rival of the goods at the points of destination, store them in warehouses until called for. But the law of warehouse- men sometimes governs the duty, rights and liabilities of express companies. These are common carriers, like rail- roads, steamships and other instrumentalities for the trans- portation of goods generally; and, as such, they are in- surers so long as the goods remain in their hands as car- riers. 12 Am. & Eng. Ency. Law 546; Hutchinson on Car- riers section 80. Good reason for rigidly applying to ex- press companies the law of common carriers is their pro- fession and representation of superiority over other carriers in respect to facilities, whereby they obtain both prefer- ence and higher compensation. They claim to have special- ized and limited their business, and so enabled themselves to bestow upon property entrusted to them a degree of care

that a general carrier cannot give, and to have employed agents and instrumentalities of peculiar and superior fitness for handling certain classes of commercial articles in transportation, so that, on the whole, they excel in respect to safety and economy in time.

By the general rule of law, express companies are required to deliver the goods to the consignee in person, or his authorized agent, at his residence - or place of business. The duty of carriage is not terminated on their arrival at the point of destination, that is, at the station or agency to which they are directed. The duty of carriage and the liability as carrier continue beyond this point to the residence or place of business of the consignee. 12 Am. & Eng. Ency. Law 550; 6 Cyc. 454; Hutchinson on Carriers, section 716. In this respect, express companies differ from other public carriers. But this rule is subject to some qualifications. If a diligent and honest effort to find the consignee or any person authorized to receive the goods has proved unavailing, failure to make actual delivery is excused, and the company may then deposit the goods in a reasonably safe warehouse. From the time of such deposit, its liability as carrier ceases and it holds the property in the capacity of warehouseman. 12 Am. & Eng. Ency. Law 551; 6 Cyc. 454; Van Zile, Bailments & Carriers, section 567; *Hasse v. Express Co.*, 94 Mich. 133. Of course the commencement and termination of liability as carrier may be limited and controlled to some extent by special contract. How far this may be done, it is unnecessary here to inquire. The general rule of law is also relaxed, varied or set aside by usage or custom established by the company and recognized and acquiesced in by the public. The maintenance of delivery messengers and vehicles involves an expense wholly out of proportion to the business transacted at small way stations, and, at such places, a custom or usage generally obtains under which deliveries are not made elsewhere than at the express company office. The consignee, is expected to call at the office for his package after having been notified of its arrival. Even in cities, delivery districts are sometimes established, beyond the limits of which deliveries are not made. Hutchinson on Carriers, sections 717, 718; 12 Am. & Eng. Ency. Law 553. The duty to give notice,

usually by mail, is founded upon the usage or custom, dispensing with the general rule requiring delivery at the residence or place of business of the consignee. Bearing this in mind, the conclusion that the express company is bound to give notice of the arrival of the goods, is not inconsistent with the holding in *Berry* v. *Railroad Co.*, 44 W. Va. 538, declaring that a railroad company is not required to give notice to the consignee of such arrival. The rules of law prescribing the duties of railroad companies and express companies differ in this respect and the difference is founded upon the additional burden placed by the law upon express companies to carry the goods from the office to which they are consigned to the residence or place of business of the consignee. But for the usage to the contrary, the liability as carrier would not end until after such delivery or an unsuccessful effort to effect it. The general rule is only partially set aside by the usage. Instead of making such actual delivery, the company gives a notice of the arrival and so substitutes for actual delivery a sort of constructive delivery. It necessarily follows that a reasonable time must be allowed for removal of the goods after notice has been given. Hutchinson on Carriers, section 716; *Express Co.* v. *Holland*, 109 Ala. 362; *Laporte* v. *Express Co.*, 48 N. Y. Supp. 292. The notice must be given promptly on the arrival of the goods. *Baldwin* v. *Express Co.*, 23 Ill. 197; *American Express Co.* v. *Schier*, 55 Ill. 140.

But the heavy burden of insurance, incident to the contract of carriage, is not extended farther than is necessary to enforce good faith on the part of the carrier and secure reasonable safety or transportation. While in transit, property is wholly in the hands of the carrier and beyond the personal control of the owner, who can neither know to what perils the carrier subjects it, nor take any measures for its safety, and the opportunities of the carriage contract for imposition by fraud and collusion are very great. These and other considerations form the basis of the insurance feature of the contract, and when these reasons for its continuation have ceased, by the completion of the contract of carriage, the liability of insurer terminates. From its exceptional and arbitrary character, it necessarily follows that

the party in whose favor it is imposed, must be diligent in the performance of every duty imposed upon him by law or the special contract. The insurance is not primary or special in character, but merely incidental to the main duty of carriage. It begins and ends with the duty of carriage, and the incidental time necessary to receiving the goods for shipment and delivering them after shipment. It has no independent life or being. The owner of the goods cannot consult his mere convenience in respect to time of removal after notice. He must remove promptly, though the weather be inclement and the roads difficult for travel. "A consignee must promptly and diligently remove goods in a reasonable time after arrival, without regard to distance from the depot, or the means of removal or convenience of the consignee, else the carrier will cease to be further liable as carrier." *Berry* v. *Railroad Co.*, cited. While this is railroad law, it clearly applies to an express company after it has fully performed its duty. In *Bluementhal* v. *Brainard*, 38 Vt. 402, the plaintiff having called for his package and found it ready, left it, intending to call for it the next morning. In the night it was stolen. The Court held the carrier not liable, since the box was in its care as warehouseman only. In *Lemke* v. *Chicago &c R. R. Co.*, 39 Wis. 449, goods arrived at their destination on Saturday evening and were destroyed by an accidental fire on the Tuesday following at about noon; and the Court held that the owner had had a reasonable time in which to remove them. It was further held that the consignee's absence from the town during most of the time elapsing between the arrival and loss of the goods was immaterial. In *Chalk* v. *Charlotte.&c R. R. Co.*, 85 N. C. 423, the goods were left on the platform of the depot for the convenience of the consignees and remained there for nearly two days. The consignees had notice of the arrival and had paid the freight charges and with knowledge of the place of deposit, but failed to remove the goods on account of inability to secure a drayman for the purpose. On the afternoon of the second day, the goods were destroyed by an accidental fire and the Court adjudged the railroad company not liable. A consignee having had notice of the arrival of goods on Saturday afternoon and neglected to

call for them until the following Wednesday, has had more than a reasonable time and can hold the carrier liable as warehouseman only. *Wynantskill Knitting Co.* v. *Murray*, 90 Hun. 554. Three full days to remove after notice of arrival is a reasonable time and the carrier cannot be held as an insurer after the lapse of such a period. *Tarbell* v. *Royal Exchange &c. Co.*, 110 N. Y. 170.

As no notice of the arrival of the package was given, in this instance, it is insisted, in the argument for plaintiff in error, in view of the principles stated, that liability as carrier had not ceased, and the demurrer should have been overruled. But there is another principle which must not be overlooked. The omission of duty, relied upon as fixing upon the carrier liability for the loss, must have been the proximate cause thereof. In *Berry* v. *Railroad Co.* this principle was applied against the carrier so as to hold it for the loss. The consignee having called upon the agent for the goods was told, contrary to the fact, that they had not arrived. But for this false statement, they would have been removed and saved from loss by fire. The false statement by the agent continued or extended the liability of the railroad company as carrier and insurer of the property. Had he truthfully informed the consignee that they had arrived, and they had then been left in the warehouse of the defendant, liability as a carrier would have ceased and the loss would have fallen upon the consignee. Application of the same principle here would exonerate the express company; for, though no notice was given, the result would have been the same, if it had been. The plaintiff himself testifies that if a postal card addressed to him, notifying him of the arrival of the package, had been placed in the postoffice, he would not have received it earlier than Monday evening, the time at which he had actual notice from another source. Hence, he would not have called for the package until the next day. To excuse a carrier from liability on the ground that the cause of the loss was the act of God or the like, it must appear that such act was the proximate, not the remote, cause of the loss. 6 Cyc. 382. Conversely, if the proximate cause is an act of God, the carrier is relieved, although, preceding the loss he had been negligent and but for that negligence, the goods would not have been exposed to the

peril resulting in their destruction.   6 Cyc. 382.   This is probably subject to the qualification that the negligence must not have contributed to the loss.   The rule is also applicable where the loss is due to a cause from which the carrier has exempted itself by a valid contract.   *Richmond &c. R. Co.* v. *Benson,* 86 Ga. 203; *Missouri &c. R. Co.* v. *McFadden,* 89 Tex. 138.   The package in question here remained in the care of the express company at Cogar from Saturday afternoon about 4:30 P. M. until Monday night. Had a notice of its arrival been deposited in the post office on Saturday afternoon, the company would then have performed all it was incumbent upon it to do.   The consignee might well have been expected to obtain the notice on that evening or Monday morning, and then, on Monday, to have called for and received his package and either taken it from the office or reshipped it; and, in the latter case, it would, on Monday night, have been in transit for New York and thus escaped loss.   Though no such notice was placed in the post office, this fact neither occasioned nor contributed to the failure of the consignee to call for his package on Monday.   By his own testimony, it appears that he would not have received the notice; for, owing to the inclemency of the weather and the bad condition of the road, he did not go to the postoffice on Monday.   Failure to send the notice did not, therefore, prejudice or injure him in any sense or degree and was not the cause of his loss. To hold the express company liable, would virtually amount to an infliction of punishment for an omission of duty which in no way injured the plaintiff.   We feel bound, therefore, in obedience to the general rule of law which precludes relief against wrongs or failures of duty, not prejudicial or productive of injury, mere technical wrongs, to say that recovery could not be sustained on the mere failure to give notice of the arrival of the package.   To this it may be replied, that, if the consignee had gone to the postoffice for his mail on Saturday evening or Monday, his mission would have been fruitless as regards notice of the arrival of his package; but had he done this, his position would have been different from what it is.   He could then have said that the omission of duty on the part of the express company had wrought injury to him.   He could then truthfully have said

that he had exercised the diligence required of him by law and had sustained a loss by reason of failure of duty on the part of the company.

Lack of sufficient evidence to establish the usage, above mentioned, relieving from the duty to make actual delivery, is suggested but it seems to have been regarded as a *concessum*. The plaintiff says such deliveries were never made to him. He was simply notified by postal card, and as he was a patron of the office, his testimony lays ample ground for the inference that such was the practice or custom as to all patrons thereof; for discrimination is not to be presumed and none is proven. The inference so raised is not contradicted in any way.

Effort is made to hold the company liable on the ground of the character of the place of deposit. Just what sort of a building it was, the evidence does not disclose, but it seems to have contained at least three rooms, a waiting room, a freight room and an office room, and there may have been another, used as a special place of deposit for express packages. It was entered by breaking a window and prying the hinges of an inner door loose. . The package was left in the freight room. No law requires the maintenance of a burglar proof building and it must be obvious that the ordinary railway station constructed of wood, brick or stone, and having glass windows unprotected by iron shutters, as practically all such buildings have, may be easily entered by any one who wills to do so. The protection upon which the citizen relies for the safety of his property is not so much in the burglar proof character or buildings and other places of deposit, as the honesty of the masses of the people and the wholesome fear which the comparatively few criminals have of the penalties of criminal law. This building was not left open nor unlocked and the entry was made with force and violence. There is nothing in the evidence relating to its character or condition which would have warranted a jury in finding a verdict against the defendant on the ground of failure to deposit the goods in a safe place. The evidence wholly fails to show any fact or circumstance tending to prove that the building was not reasonably safe. Nor could a verdict stand upon the failure to place the package in the express room instead of the freight room.

No law requires the deposit to be made in any particular room. If the place of deposit be reasonably safe, the requirement of the law is fulfilled. Deposit in the freight room instead of the express room is neither like, nor analogous to, shipment to a wrong destination; for the goods are still in the immediate custody and control of the carrier and ready for delivery at the place of destination.

The views and conclusions just expressed result in an affirmance of the judgment.

*Affirmed.*