# CHARLESTON.

STEFAN ANNESE v. BALTIMORE & OHIO RAILROAD COMPANY.

Submitted January 25, 1921. Decided February 1, 1921.

1. JUSTICES OF THE PEACE—*Complaint Sufficient if Person of Com-
mon Understanding Will Know What is Intended.*

    The complaint filed in a justice's court answers all the re-
    quirements of chapter 50 of the Code, if it be sufficient to
    enable a person of common understanding to know what
    was intended. (p. 590).

2. CARRIERS—*Carrier Liable for Unloading Perishable Goods in
Mud and Rain, Notwithstanding Stipulation in Bill of lading.*

    Notwithstanding a bill of lading stipulates that property

destined to be taken from a station, wharf or landing at which there is no regularly appointed agent shall be entirely at the risk of the owner after unloading from cars or vessels, the carrier will not be relieved thereby from his gross negligence in unloading in the mud and rain at an unreasonable hour of the night goods consigned to such point, when the consignee is not present or could not reasonably be expected to be present, and when it is manifest that such goods because of their character will be certainly destroyed or rendered useless by the elements. (p. 592).

3. SAME—*Carrier Cannot Ordinarily Relieve Itself From Liability for Negligence.*

A carrier cannot by such contract ordinarily relieve itself from liability for negligence in the performance of its duties as carrier. (p. 594).

4. SAME—*Carrier Cannot Limit Liability for Unloading Goods in Mud and Rain.*

When confronted with circumstances due to the elements rendering a carrier unable to make safe delivery of goods consigned to a particular destination, it can not by contract excuse itself for its negligence in wantonly discharging said goods at such point in mud and rain in a place where they will certainly be destroyed and rendered useless. (p. 594).

5. JUSTICES OF THE PEACE—*Defects in Complaint Not Excepted to Cured by Statute of Jeofails.*

When a complainant before a justice states a good cause of action, not excepted or demurred to, and on the trial evidence is admitted without objection on a cause of action not clearly stated in the complaint, the statue of jeofails, after verdict and judgment, will cure any defect of pleading. (p. 596).

Error to Circuit Court, Barbour County.

Action by Stefan Annese against the Baltimore & Ohio Railroad Company before a justice of the peace. Judgment for plaintiff on appeal to the circuit court, and defendant brings error.

*Modified and affirmed.*

*Arthur S. Daylon,* for plaintiff in error.

*Albert G. Jenkins* and *J. Blackburn Ware,* for defendant in error.

MILLER, JUDGE:

In an action begun before a justice, and tried before the

circuit court upon appeal, plaintiff obtained a verdict and judgment for $150.00, interest and costs, the judgment before the justice being $168.49.

The cause of action was the alleged negligence of defendant in the delivery of certain merchandise shipped to him from certain points and consigned to him at a station known as Century No. 2 Mine, on defendant's railroad in Barbour County, consisting of flour, sugar, salt, and other perishable goods. The acts of negligence alleged and relied on in the complaint and in plaintiff's evidence before the court and jury were that defendant maintained no building, station, shed or other structure at said point, Century No. 2 Mine, to protect goods from the elements after being unloaded from its railroad cars; that the goods sued for and so consigned were, at an unreasonable hour of the night, to-wit, at about two o'clock in the morning, out of business hours, and when defendant had no right to expect plaintiff to be present to care for such goods, and without notice to him that the goods would be so transported and unloaded at such unreasonable hour, and without taking reasonable precaution to protect the same, then and there unloaded the goods at said destination while it was then and there raining, with notice and knowledge of the character of the goods and of their liability to be destroyed and injured by the water, which delivery, because of defendant's negligence, did not constitute legal and proper delivery thereof, and whereby a large part of said goods were damaged, destroyed and rendered useless, and whereby plaintiff was damaged and sustained loss in the amount sued for, namely, $168.49.

We think this informal complaint in an action begun before a justice stated a good cause of action. It was sufficient to enable a person of common understanding to know what was intended; that is all that is required by chapter 50 of the Code, relating to pleadings in justices' courts. *O'Conner* v. *Dills,* 43 W. Va. 54, 59; *Poole* v. *Dilworth,* 26 W. Va. 583; *Toledo Scale Co.* v. *Bailey,* 78 W. Va. 797, 802; *State* v. *Emsweller, Id.* 214.

The defendant pleaded and relied on the following provision of the bills of lading:

"Property destined to or taken from a station, wharf, or landing at which there is no regularly appointed agent shall be entirely at risk of owner after unloading from cars or vessels or until loaded into cars or vessels, and when received from or delivered on private or other sidings, wharves or landings shall be at owner's risk until the cars are attached to and after they are detached from trains."

And it is further averred that if loss or damage had been sustained by plaintiff, it had occurred after the goods had been unloaded from defendant's cars or rehandled; that it maintained no agent at the point of destination of the goods, at which point there was a local custom that shipments should be piled by defendant's tracks when unloaded, at the owner's risk.

The evidence shows that the freight train which carried plaintiff's goods was what is called a pick-up train, of irregular schedule; that formerly it was due to arrive at Century No. 2 Mine about five o'clock in the evening, but at the time of the shipment of plaintiff's goods, in January, 1915, and for some time prior thereto, its schedule brought it to that point about five o'clock in the morning; but the evidence shows that on the morning the goods sued for arrived and were unloaded by defendant, the train reached Century No. 2 Mine some time between three o'clock and four o'clock in the morning. The conductor says that the range of the time of arrival for the period of six months preceding January 6, 1915, was from midnight to five o'clock in the morning. The witnesses vary in their recollection as to the time of the arrival of the train at Mine No. 2 on the morning in question, but it is clear that it was between three and four o'clock. And the witnesses agree that it had been raining practically all night; the conductor of the train admits it had rained hard just before he reached Century No. 2 Mine, and that it rained hard twenty minutes after the goods were unloaded. At least one witness, Tony Quinto, who worked about 150 feet away, says it was pouring down rain while the goods were being unloaded, and he says the time was a little after three o'clock. He got up at three o'clock, and he then heard the train coming. The place where

the goods were unloaded was where a .private road comes down across defendant's railroad. All. the witnesses·agree that the road and grounds surrounding were very wet and muddy,. and a number of witnesses say the flour in paper bags, sugar, salt, and feed were put off in the mud and water, and a large portion of them were totally destroyed by coming in contact with the mud and water and the rain falling upon them. The plaintiff was absent from home the night the goods arrived,. but his brother Angelo Annese, who was called, says that about four o'clock he dressed, went out about five o'clock, found it raining hard. He went down to the place where the goods had been unloaded, and swears he found them unloaded in six inches of mud. He covered them with oil cloth, called his brother on the·telephone, and following his instructions carried most of them into the store, and tried to save as many as possible, but all were wet and a large·portion of them could not be saved.

The sole question presented for decision is, was it actionable negligence under the facts and circumstances described, notwithstanding the provision in the bills of lading pleaded and relied on for the defendant company, to unload the goods in the rain and mud, as the jury were warranted in finding and for which plaintiff may recover damages for the loss sustained. That it was the custom to deliver shipments for the plaintiff at the place where the goods in question were delivered, is conceded;. but, plaintiff and some of his witnesses say the train usually arrived about five o'clock in the morning, but that it had never before occurred that goods perishable like these were put off in the rain and mud at such unreasonable hour, when they would certainly be damaged or destroyed.

Following prior cases we decided recently that a special contract of the kind pleaded, when reasonable and which does not undertake to provide against the carrier's liability for negligence of its agents and servants, is enforceable. *McClure* v. *Norfolk & Western Railway Co.* 83 W. Va. 473. In that case,. however, we held the provision of the contract inapplicable, in as much as the railway company within the meaning of the contract did maintain an agent at the point of shipment.

The evidence is that the defendant maintained no depot or station agent at Century No. 2 Mine, and that plaintiff was accustomed to receive goods consigned to him there substantially on the crossing where the goods sued for were delivered; but there is no evidence that he was accustomed to receive them at any unreasonable hour as three or four o'clock in the morning, in a rain storm; nor is there any evidence that the defendant ever before undertook to make delivery of goods to plaintiff at the same point at any such unreasonable hour as these goods were unloaded.

Our decisions say, in accordance with the better rule, that a railroad company is not required to give notice to the owner of the arrival of goods, the duty resting upon the owner to be on the lookout for their arrival, but that he has a reasonable time after their arrival to remove them, after which the duty of carrier ceases and that of warehouseman begins, where the carrier maintains an agent or station house in which the goods may be stored. *Berry* v. *W. Va. & Pittsburg R. R. Co.,* 44 W. Va. 538; *Hutchinson* v. *Express Co.,* 63 W Va. 128; *Harley & Son* v. *N. & W. Ry. Co.,* 68 W. Va. 471, 473. In this case plaintiff of course knew that defendant maintained no station or warehouse at the place of delivery and had no agent there to look after the goods. But can defendant under its common-law obligation to make safe delivery contract against gross negligence? It is said the damages were sustained after delivery, but this is not true unless the delivery of the goods at the unreasonable hour of three of four o'clock in the morning constitutes good delivery. The law applicable to common carriers is that delivery must be made at the point of destination at a reasonable hour, and not negligently. 4 R. C. L. 825.

It might be said that the rain doing the damage was the act of God, against which the defendant was not bound to provide. But the *vis major* never relieves the carrier, if as the jury have found in this case, it was not the sole cause, but was accompanied by defendant's negligence in attempting to make the delivery in the mud and rain at an hour when the consignee could not be expected to be present to receive and protect the goods. 4 R. C. L. 719, and cases cited. When encountering

the *vis major,* it is the duty of the carrier to do all in his power to protect goods committed to his care. The defendant's carriage having reached its destination in a rain storm at an unreasonable hour of the night when no one was present to protect the goods, it was not warranted in thrusting them out of its car to be destroyed by the elements. Such attempted delivery did not discharge it from liability as carrier. 4 R. C. L. pp. 709-710; *McGraw* v. *B. & O. R. R. Co.,* 18 W. Va. 361; 2 Hutchinson on Carriers, (3rd ed.), sec. 704, p. 785.

In answer to the argument based on the common-law liability of carriers, it is said the contract pleaded relieved defendant from liability for resulting injury to the goods when they reached their destination and were put off there. But the law of carriers is that they can not contract against negligence, and if it was negligence under the circumstances to put plaintiff's perishable goods off in the night time in the mud and rain, where it must have been apparent they would certainly be destroyed, what principle of law can relieve defendant from liability? It is said by counsel that it would have been a violation of the contract to have carried the goods beyond their destination, that to have done so would have rendered defendant liable for damages resulting to the owner. The reply to this is that the carrier, notwithstanding his contract, is not liable for damages for failure to do the impossible, in this case to make a safe delivery when the elements were certain to destroy the goods. When confronted with such circumstances, its duty was to retain the goods on the car, if unable otherwise to protect them, and notify the owner. *Savannah Ry. Co.* v. *Commercial Guano Co.,* 103 Ga. 590, 597; 2 Hutchinson on Carriers, (3rd ed.), §§645, 649. In opposition to this view of the law counsel for defendant company relies on the holding of the Supreme Court of Pennsylvania in *Allam* v. *Penna. R. R. Co.,* 183 Pa. 174, 39 L. R. A. 535. In that case the delivery was in the day time, and it was held not negligence for the railroad company to unload goods on a platform during a storm, where it had no building and at a station where it had no agent, and the bill of lading provided that when delivered on the platform the goods should be at the risk of the owner. But

if in this case the delivery had been in the day time, under the same circumstances and conditions, we would still be disposed to hold the defendant liable for negligence. Undoubtedly a carrier may limit its common-law liability, not involving negligence, but we hold that when as in this case the defendant was guilty of gross negligence in putting the plaintiff's goods · off in the mud and rain in the night time to certain destruction, the contract against liability was unavailing, and defendant's liability for safe delivery was not fulfilled by such negligent attempt at delivery of the goods. In *Savannah Ry. Co.* v. *Commercial Guano Co., supra,* the Georgia court says: "It was further contended in behalf ·of the plaintiff in error, that the steamboat company exercised due diligence in the delivery of the freight, and that the submerging of the guano by the river was an act of God which could not have been forseen. The goods were placed upon the bank of the river at a point below high-water mark, while it was raining and the river was rising, and where they were in imminent danger of being submerged on account of a freshet that was threatened at the time they were unloaded from the boat. No necessity appears for a discharge of the freight at this particular time. It could have been carried on, and kept until a return trip of the boat. The casualty which caused the injury to the goods may be regarded as an act of God, but the carrier is not protected on this account where he could have foreseen the happening of the event, or by the exercise of due diligence could have provided against such an occurrence."

Another point of error urged by defendant's counsel is that the complaint predicates right of action only on two grounds: first, delivery at an unreasonable hour; and second, the duty of the defendant to protect the goods from rain; and as the complaint pleads no right of action for having unloaded the goods in the mud, no recovery can be sustained on that ground. This point was not made in the answer of the defendant below, and it is quite too refined a distinction for proceedings originating in justices' courts. Much of the evidence related to damages for unloading the goods in the mud. The evidence went in unobjected to for variance or on other grounds; and counsel

for defendant undertook by instructions and special interrogatories propounded to the jury, to limit recovery solely to damages resulting from unloading the goods in the mud and to exclude recovery for loss sustained by the falling of the rain upon them after they were unloaded. As the complaint states a good cause of action, was not demurred to, and evidence was admitted on the theory of negligence in unloading the goods in the mud as well as from the rain upon them, we think any defect in the pleadings was cured after verdict and judgment by our statute of jeofails, section 3 of chapter 134 of the Code. *Holliday's Ex'rs* v. *Myers,* 11 W. Va. 276, 292-3. In that case the court says: "But so far as I have seen, in no case in Virginia or in this State, has it yet been held under the present statute, that said statute does not apply and operate, where the declaration does not show affirmatively, that the plaintiff has no right to recover against the defendant; nor has it yet been held, that the statute does not apply and cure after judgment, when the cause of action is merely so imperfectly or insufficiently alleged in the declaration, as that it does not show a perfect or complete right of recovery, and the court can see that the defect, though of substance, may be supplied by proper proof."

Plaintiff's instructions Nos. one and two, which were both in accord with the principles herein stated, were properly given to the jury; those of the defendant rejected were not in accord therewith, and were properly denied. The interrogatories proposed by defendant to the jury were uncontrolling, and those denied were properly denied.

Another point of error relied on is that the court below adjudged that plaintiff recover ten percentum damages on $150.00, the amount of the verdict of the jury, from August 28, 1915, the date of the appeal from the judgment of the justice. The ten percentum authorized by section 172 of chapter 50 of the Code, is applicable only when the sum recovered on appeal in the circuit court is equal to or greater than the judgment appealed from. As the judgment before the justice was $168.49, and that on the trial in the circuit court only $150.00, the statute giving ten percentum does not

apply. As the difference between the damages adjudged and six percentum is not sufficient to give this court jurisdiction, all we can do is to correct the error, which we will do so as to give judgment for plaintiff for $150.00, according to the verdict of the jury, with interest thereon from January 25, 1917, the date of the verdict, and the costs incurred by him before the justice, and the costs incurred here on this writ of error.

*Modified and affirmed.*