HENRY R. SOMMERVILLE

*v.*

THE PENNSYLVANIA RAILROAD Co., *a corporation*

(No. 12636)

Submitted May 2, 1967.     Decided June 27, 1967.

710

Calhoun, *President,* dissenting.

*Goodwin, Mead & Goodwin, Russell B. Goodwin,* for appellant.

*Martin S. Bogarad,* for appellee.

CAPLAN, JUDGE:

This case is before the Court on appeal from a final judgment of the Circuit Court of Hancock County en-

tered on a jury verdict as to damages after the court had directed a verdict on liability for the plaintiff.

The defendant, The Pennsylvania Railroad Company, a corporation sometimes herein referred to as the "Railroad", filed its answer to the complaint and moved the court for leave to make Weirton Steel Company, a corporation, a third-party defendant to this action. The third-party complaint was filed and notice of its motion was properly served on the plaintiff. After the Weirton Steel Company filed its answer to the third-party complaint, a hearing was held and the motion to make Weirton a third-party defendant was granted.

The National Steel Corporation, of which Weirton is a division, instituted an action against The Pennsylvania Railroad Company for damages to its building. At a pretrial conference the court consolidated these cases but, for the purpose of a trial by jury, the claim of Sommerville against The Pennsylvania Railroad Company was ordered severed and a trial of that case was held, resulting in this appeal.

In his complaint the plaintiff, Henry R. Sommerville, alleges that on October 1, 1959 at 2:20 A.M. he was an employee of the Weirton Steel Company and was at that time engaged in his employment in a building on Weirton's property; that while so employed the defendant railroad, through its servants or employees while operating a train through the premises of Weirton, negligently, carelessly and unlawfully so operated the train that it collided with the building in which the plaintiff was working; and that said collision caused the destruction of the building and severe injury to the plaintiff.

Answering the complaint, the defendant railroad denied that it negligently, carelessly and unlawfully operated the train which collided with the building in which the plaintiff was then working. It denied that the plaintiff was injured as a direct and proximate result of any negligent, careless and unlawful conduct

of said defendant. The answer of the Railroad then affirmatively alleged that the collision complained of was proximately caused by the employees of Weirton Steel Company in that they failed to properly inspect and maintain the said railroad tracks, equipment and switch belonging to said company. The basis for the latter defense is found in the third-party complaint wherein the defendant railroad relies on a sidetrack agreement entered into with Weirton Steel Company for the operation of trains by the Railroad over the tracks located on the Steel Company's premises. Particular reliance is placed on paragraph 8 of said agreement part of which reads as follows:

"The Industry also agrees to indemnify and hold harmless the Railroad Company for loss, damage or injury from any act or omission of the Industry, its employees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about said side track; and if any claim or liability, other than from fire, caused by locomotives as aforesaid shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally."

The foregoing is predicted on that provision of the agreement which provides that Weirton Steel shall maintain the portion of the side-tracks situate on the property of said company.

The following factual situation gave rise to this action. On October 1, 1959, at approximately 2 A.M. a train of The Pennsylvania Railroad Company, operated by its employees, entered the premises of Weirton and proceeded along track #3 for the purpose of picking up an empty box car at the dead end of that track. In performing this operation, the train backed down track #3, travelling over a switch which permitted a spur line, track #2, to join said track. After effectively coupling the empty box car, the defendant's train proceeded in a forward direction to move the cars along

track #3. It appears from the evidence that the locomotive and all of the cars, except the last car in line, successfully passed over the aforementioned switch. The last car, due to what undisputedly has been acknowledged to have been a defective switch, failed to traverse that point. Instead, as indicated by the testimony, the front set of wheels of said last car followed the train but the rear set of wheels ''picked the switch'' and started down the spur, track #2. As a result the car collided with the building which was situated between tracks #2 and #3 and in which the plaintiff was then working.

It is the position of the defendant railroad that in accordance with a sidetrack agreement between the parties entered into in 1927, and in effect since that time, Weirton constructed, owned and maintained all of the tracks on its property; that by reason of said agreement it, Pennsylvania, had no obligation or duty of maintenance of any of the tracks, equipment or switches on Weirton's property; that negligence in failing to properly inspect and maintain the switch in question cannot be chargeable to the defendant; and that in any event, by reason of said track agreement, the aforesaid duties and obligations are Weirton's not the defendant's. It appears from the record that Weirton did construct and has maintained the tracks and switches on its property. The defendant also relies on the doctrine of sudden emergency, asserting that when this accident occurred its employees were confronted with a situation constituting a sudden emergency and that they did everything possible to prevent the damage and injury to the company and plaintiff.

At the completion of all of the evidence, the trial court, being of the opinion that the sidetrack agreement did not relieve Pennsylvania of its obligation to properly maintain tracks over which it was operating, as to a third person, and that such duties were nondelegable, instructed the jury to return a verdict in favor of the plaintiff as to liability. The case was then

submitted to the jury for its verdict as to damages and the jury returned a verdict in the sum of $9,500.00 in favor of the plaintiff. After the defendant's motion to set aside the verdict was denied, this appeal was prosecuted.

A careful examination of the pleadings filed in this case and of the evidence adduced during the trial reveals clearly that the defense to the complaint is based principally on the sidetrack agreement between Pennsylvania Railroad Company and Weirton Steel. The Railroad contends that, in view of its agreement with Weirton, any negligence existing by reason of the failure to properly inspect and maintain the tracks and switches is chargeable, not to it, but to Weirton. The defendant railroad readily acknowledges, and it is undisputed in the record, that the injury suffered by the plaintiff was the proximate result of the admittedly defective switch.

This position is evidenced by the language in its answer to the complaint, wherein Pennsylvania said: "Defendant alleges that said collision mentioned in the Complaint was proximately caused by employees of the Weirton Steel Company, and by their failure to properly inspect and maintain the said railroad tracks, equipment and switch belonging to the Weirton Steel Company, a corporation."

In substance the Railroad argues that although the defective switch was the proximate cause of the plaintiff's injuries, the failure to discover such defect was chargeable to Weirton. It reasons that Weirton had agreed to inspect and maintain the tracks and switches on its premises and its failure to fulfill its obligations relieved the Railroad of all responsibility.

The sidetrack agreement referred to above was entered into by the defendant railroad and Weirton. As between those parties it appears to be a valid contract, although that is a matter not to be determined in this proceeding. The plaintiff, however, was not a

party to that agreement, so its provisions are not relevant insofar as the subject claim is concerned.

The Pennsylvania Railroad Company, being a common carrier, Code, 1931, 31-2-1, is acting within its franchise as such when it operates its trains on the property of others. Code, 1931, 24-3-1. As a common carrier, a recipient of a franchise from a governmental authority, it is charged with a duty to maintain in a safe condition the tracks, equipment and switches over which it operates. 74 C.J.S., Railroads, Sec. 124a. This duty exists whether it is operating its trains over its own right of way or on tracks situate on property of others. In the instant case, therefore, Pennsylvania's status as a common carrier was not diminished by the fact that it was using tracks owned by Weirton. It remained primarily its duty to inspect the tracks and switches for the purpose of determining that its train could travel safely thereover. The sidetrack agreement with Weirton did not abrogate that primary duty.

That such tracks and switches are considered under the control of the Railroad, even though they are on the property of Weirton is clearly demonstrated by the following statement in 74 C.J.S., Railroads, Sec. 410: "Sidetracks constituting part of a transportation system are among the works and appendages usual in the convenient operation of a railroad and are 'facilities' of the railroad, even though privately owned." See also *Lehigh Nav. Coal Co. v. Pennsylvania Public Utility Commission,* 133 Pa. Super. 67, 1 A. 2d 540; *Rogoff v. Buncher Company,* 395 Pa. 477, 151 A. 2d 83; *United States v. Baltimore and Ohio Railroad Company,* 333 U. S. 169, 68 S. Ct. 494, 92 L. ed. 618.

As herein noted, the Railroad, although acknowledging that the defective switch was the proximate cause of the plaintiff's injury and that there was a duty to maintain that switch in a safe condition, asserts that it was relieved of such duty by reason of its side-

track agreement with Weirton. The subject agreement may be valid as between Weirton and Pennsylvania and may supply a basis for an action by either party for a breach thereof. However, as to the plaintiff, a third party, it has no effect.

A railroad operating mammoth equipment over its lines owes a duty to exercise the care which the law prescribes for the safety, not only of its passengers, but also of others in close proximity to its tracks. By reason of its franchise it assumes, as one of its primary obligations, the operation of its equipment and the maintenance of its tracks and switches under such conditions as will secure the safety of the public, including the person or property of others near the track. The failure to perform under such obligation, resulting in injury or damage, renders the railroad liable. 44 Am. Jur., Railroads, Sec. 412.

The duty of Pennsylvania in the instant case was the maintenance of the subject switch so as to secure the safety of the public. To accomplish this effective inspection was essential, and, as to the public, this too was a duty of the railroad. The uncontradicted evidence clearly reveals an omission by the Railroad to perform its duty. It must be conceded that proper maintenance was not undertaken because the train was permitted to travel over a defective switch. Furthermore, the testimony on behalf of the railroad affirmatively shows that it failed to maintain the switch and that no inspection of the switch was made. Therefore, the omission to perform its duty was total. The railroad admits that the defective switch was the cause of the accident. In view of this admission and having found that the railroad was under a duty to maintain the subject switch, which it failed to do, it remained only for the court to direct a verdict for the plaintiff regarding liability. The unquestioned failure of the defendant railroad to perform its duty, which failure resulted in the injury, constituted negligence as a mat-

ter of law and rendered the defendant liable, in the absence of contributory negligence on the part of the plaintiff. It is well settled that when the material facts are undisputed, as they are here, and reasonable men may draw only one conclusion from them, the question of negligence is a question of law for the court. *Griffith v. Wood,* 150 W. Va. 678, 149 S. E. 2d 205; *Graham v. Crist,* 146 W. Va. 156, 118 S. E. 2d 640; *Brake v. Cerra,* 145 W. Va. 76, 112 S. E. 2d 466; *Workman v. Wynne,* 142 W. Va. 135, 94 S. E. 2d 665; *Hartley v. Crede,* 140 W. Va. 133, 82 S. E. 2d 672; *Mathews v. Cumberland and Allegheny Gas Company,* 138 W. Va. 639, 77 S. E. 2d 180; *Daugherty v. Baltimore and Ohio Railroad Company,* 135 W. Va. 688, 64 S. E. 2d 231; *Wood v. Shrewsbury,* 117 W. Va. 569, 186 S. E. 294. In these circumstances there is nothing for the jury to consider and it is incumbent upon the trial court to declare the defendant liable as a matter of law. This the trial court did and we sustain its decision.

We come again to a consideration of the sidetrack agreement and the Railroad's reliance thereon. It contends that Weirton assumed the duty to maintain and inspect the tracks and switches thereby relieving it, the Railroad, of liability. As a general rule, a railroad may limit its liability by contract and such limitation may be effective as between the parties thereto. However, it is also the rule that it cannot relieve itself from liability for negligent breach of a duty imposed upon it for the benefit of the public, or for the breach of duties which it owes the public. A railroad cannot exempt itself from liability for losses resulting from its negligence or misconduct. 44 Am. Jur., Railroads, Sec. 412. See 14 Am. Jur. 2d, Carriers, Sec. 554 and cases cited in the footnotes thereto. *Annese v. Baltimore & Ohio Railroad Company,* 87 W. Va. 588, 105 S. E. 807, 22 A. L. R. 869; *Bosley v. The Baltimore and Ohio Railroad Company,* 54 W. Va. 563, 46 S. E. 613. The Railroad cannot relieve itself of its primary obligations and duties by contracting with another to perform them. See *Humphrey v. The Vir-*

*ginian Railway Company,* 132 W. Va. 250, 54 S. E. 2d 204 and *Carrico v. West Virginia Cent. & P. R'y Co.,* 39 W. Va. 86, 19 S. E. 571. In the latter case the Court said: "The doctrine of non-liability of a defendant, because the act is that of an independent contractor, does not apply where the thing, which that contractor does and does negligently, is something which the law in defence of public interest requires the defendant to do carefully and properly."

We are of the opinion, therefore, that the trial court correctly ruled that the defendant railroad could not by a contract of indemnity with Weirton absolve itself of liability for its negligent injury of the plaintiff.

It has been argued that whether the defendant railroad exercised the necessary degree of care presents a jury question. In view of the undisputed evidence, which shows total nonperformance of a required duty, it is difficult to discern the relevancy of such argument. Since the Railroad failed altogether to perform a duty, which it was bound by law to perform, the matter of degree of care is of no significance here.

It also has been argued that even if the Railroad had a duty to inspect, such inspection would have been to no avail. This apparently is based on the testimony of the plaintiff's witness, Mr. Milo Gray, Safety Director of the Weirton Steel Company. Mr. Gray testified that he observed the switch and that it was broken; that the switch was on the surface of the ties between the rails and was visible; that the brakeman working there would not have been able to have seen the switch "in this particular case"; and that if he had operated the switch he very definitely would have noticed the defect. Employees of the Railroad, testifying on its behalf, stated that they did not inspect the switch but that if the switch had been operated the defect would have been readily discernible.

We fail to see, under the evidence adduced at the trial of this case, why it would have been to no avail to have inspected this defective switch. Perhaps a cursory glance would not have revealed a defect but that does not satisfy the requirements of an inspection. There was testimony that the switch was visible and that had it been operated the defect would have been readily detected. Furthermore, this switch had not been operated for more than a year and there was no showing that it had been recently inspected. To meet the requirements of law, an inspection in such circumstances must be effective and meaningful.

We have also considered the defendant's reliance on the doctrine of sudden emergency and find that such doctrine has no application to this case. Nor do we find, as a matter of law, that the verdict returned by the jury was excessive.

For the reasons stated herein the judgment of the Circuit Court of Hancock County is affirmed.

*Affirmed.*

CALHOUN, PRESIDENT, dissenting:

Respectfully I dissent.

I am unable to discern the pertinency of Code, 1931, 24-3-1 and 31-2-1, cited in the majority opinion. Admittedly, the defendant railroad company is a common carrier and, as such, it has a duty to serve the public, including Weirton Steel Company and to connect with Weirton's private track facilities. The trial court was obviously correct in holding that, by virtue of its agreement with Weirton Steel Company, the defendant railroad company was not relieved of performance of whatever duty it owed to the plaintiff. It is undisputed also that the accident and the consequent injuries suffered by the plaintiff resulted from the broken switch.

My dissent relates primarily to the nature and extent of the duty owed by the railroad company to

the plaintiff and to this Court's holding that the factual question of causation was one of law for decision by the court rather than one of fact for the jury.

In its charge to the jury, the trial court stated: "This Court must now inform you as a matter of law since the Railroad Company is a common carrier the law of West Virginia will not permit the Railroad Company to delegate its duty of keeping the track or switches in good and safe condition even though the track and switches are on the property of the Weirton Steel Company and owned by said Steel Company, and consequently I must direct you at this time that it is your legal duty to return a verdict in favor of the plaintiff Henry R. Sommerville against the defendant Pennsylvania Railroad Company." In ruling previously on the plaintiff's motion for a directed verdict at the conclusion of all the evidence, the trial court, in chambers, made the following statement as the basis of its ruling: "* * * and pursuant to Carrico v. West Virginia Central and Pacific Railroad Co., 39 W. Va., page 86, and pursuant to Baltimore and Ohio Railroad Co. v. American Viscos Corp., 214 Fed. Sup., page 287, this court by analogy believes that the delegation of maintenance of tracks and switches by a railroad company under our statutes and judicial decisions as it affects third parties is a nondelegable duty and consequently the plaintiff is entitled to a directed verdict against the railroad in the above-captioned cause." In his memorandum opinion filed and made a part of the record in connection with the motion for a new trial, the trial judge again stated his conception of applicable legal principles in language similar to that quoted immediately above.

The trial court obviously was of the opinion that, in line with the holding of the *Carrico* case cited by him, the railroad company owed to the plaintiff an absolute duty to maintain the switch in good and safe condition and that, upon proof of its failure to do so, liability to the plaintiff followed as a matter of

course, irrespective of considerations of due care or negligence. For an additional statement of the character of the duty owed by a railroad company to a passenger, see *Searle's Admr. v. Kanawha & O. Ry. Co.*, 32 W. Va. 370, pt. 3 syl., 9 S. E. 248.

In his brief filed in this Court, counsel for the plaintiff cites and relies upon the case of *Carrico v. West Virginia Cent. & P. Ry. Co.*, 39 W. Va. 86, 19 S. E. 571, for the proposition of absolute liability. In this respect, counsel is adhering to and espousing the trial judge's conception of the law which should be applied to the facts of this case. The *Carrico* case involved an action by a passenger to recover damages for personal injuries caused to him by the collision of a railroad coach with a pile of rocks near the railroad tracks. In the fourth and fifth points of the syllabus, the Court held that the railroad company owed to the plaintiff, as a passenger, "* * * the absolute duty * * * to keep its track free from dangerous obstructions of every sort, * * *" and that the railroad company could not relieve itself of that duty by delegating performance of certain work to an independent contractor. Cases of that character, involving injuries to passengers, are wholly inapposite. So are cases involving damage to goods received for shipment, in which cases liability of the carrier is even stricter and more onerous than in cases involving personal injuries to passengers. *Hutchinson v. United States Express Co.*, 63 W. Va. 128, 59 S. E. 949, *McGraw v. B. & O. R. R. Co.*, 18 W. Va. 361; 14 Am. Jur. 2d, Carriers, Section 1040, page 458.

The relationship of a railroad company to a passenger or to a shipper of goods is based on contract and the legal duties thereby imposed are based on the carrier-passenger or on the carrier-shipper relationship. The plaintiff in this case did not bear a relationship to the carrier either of a passenger or a shipper. The duty owed by the defendant carrier to the plaintiff, therefore, was a duty merely to exercise reason-

able care, the same duty owed to a motorist injured in a railroad crossing accident, to a pedestrian injured by a train while on or near the railroad tracks or to the owner of an animal injured by the operation of a railroad train.

Even if the track and switch here in question had been owned and maintained by the defendant railroad company on its own property and as part of its railroad system, it would have owed to this plaintiff, in these circumstances, only a duty of reasonable care in the inspection and maintenance of its track and switch.

Counsel for the parties, as I understood them, stated before this Court that they had been unable to find and were not aware of any authority for the proposition that the defendant railroad owed to the plaintiff in this case any duty to inspect and maintain the track and the switch, owned and maintained by the Weirton Steel Company on its own private property, comparable to the duty which was owed to the plaintiff passenger in the *Carrico* case. I believe no authority can be found to place on the defendant in this case any duty to the plaintiff to inspect and to maintain the switch in question, except to the extent that, if at all, such duty may have been required in the discharge of the duty of due care which the defendant owed to the plaintiff.

I believe that in this case, irrespective of the written contract, the primary duty of inspection and maintenance of the track and switch was upon Weirton Steel Company, which owned and maintained these facilities on its own private property. That primary duty could not be "delegated" or avoided by Weirton Steel Company by the mere use of such facilities by the railroad company for the benefit of the owner of such facilities. Whatever duty, if any, the railroad company owed to the plaintiff to inspect and to maintain Weirton Steel Company's facilities was of a secondary character. Conceivably the railroad company and Weirton Steel

Company could have been guilty of concurrent negligence which proximately caused the plaintiff's personal injuries. The plaintiff was not permitted to sue his employer, Weirton Steel Company, because it was a subscriber to the workmen's compensation fund, from which the plaintiff was paid benefits on account of the injuries he sustained in the accident; but from this fact the liability of the railroad company does not necessarily follow. If the accident and consequent injuries resulted solely from the employer's negligence, and if the railroad company exercised reasonable care in the circumstances, then, of course, the plaintiff is not entitled to recover from the defendant railroad company.

The complaint alleges that the railroad company "* * * negligently, carelessly and unlawfully so operated said train that it collided into a certain building * * *." The answer, as a part of its First Defense, states: "The Complaint fails to allege any negligent acts of omission or commission." In a pre-trial conference order it was stated that the defendant railroad company contended that it "* * * is not guilty of any negligence * * *," "* * * nor could it by the exercise of reasonable care have any knowledge of any defects in the track, which caused the train to leave the rails thereof." The motion to set aside the verdict stated that the court erred in directing a verdict for the plaintiff " * * * as the evidence showed that the train crew were not negligent in the operation of said train." Evidently referring to the alleged duty of the defendant to inspect and to maintain the track and the switch, the fifth point of the motion to set aside the verdict states: "The evidence showed that this derailment occurred on a private railroad or private terminal of the Weirton Steel Company over which it had complete maintenance and control and that there was no negligence of the railroad which proximately caused the damage." In connection with the plaintiff's motion for a directed verdict after the Court had indicated its intention to instruct the jury pursuant to

the *Carrico* case, counsel for the railroad company stated: "I would like to move the Court that the proper way of submitting this case under the ruling of the Court is to submit the question of negligence of the railroad to the jury and then request the jury to find damages, if any, * * *." In that connection, counsel stated: "* * * we take objection and exception to this charge because the question of negligent operation of the train by the Pennsylvania Railroad Company is not submitted to the jury * * *." Counsel further stated in that connection that it was the defendant's position that there was not "* * * any evidence of negligence of the operation of the train and that was the sole question, we believe, for determination by the Court and determination by the jury at this trial." In the light of these and other portions of the record, I believe the following statement in the majority opinion is unwarranted: "A careful examination of the pleadings filed in this case and of the evidence adduced during the trial reveals clearly that the defense to the complaint is based principally on the sidetrack agreement between Pennsylvania Railroad Company and Weirton Steel. * * *." The same is true of the italicized portion of the following language in the majority opinion. "As herein noted, the Railroad, although acknowledging * * * that *there was a duty to maintain that switch in a safe condition,* asserts that it was relieved of such duty by reason of the sidetrack agreement with Weirton. * * *." (Italics supplied.)

As I read and understand the record, counsel for the defendant railroad from the outset has stoutly denied that it had any duty to inspect and to maintain the track and switch in question; and has persisted in asserting the defendant's position that if there was any legal reason for liability against the defendant, it must be on the basis of its negligence or a lack of reasonable care.

The Court, in the first point of the syllabus in this case, holds as a matter of law that this defendant,

"being a common carrier", was under "a duty to maintain in a safe condition the tracks, * * *," it was using on private property of another. The Court does not state that the defendant was under a duty to exercise reasonable care in the maintenance of the track. As I understand the majority opinion, the Court holds that there was an absolute, unqualified duty to maintain the track "in a safe condition." In the body of the opinion, the Court has stated:

"The duty of the Pennsylvania in the instant case was the *maintenance of the subject switch so as to secure the safety of the public. To accomplish this effective inspection was essential* and, as to the public, this too was a duty of the railroad. * * * Furthermore, the testimony on behalf of the railroad affirmatively shows that it failed to maintain the switch and that no inspection of the switch was made. Therefore, the omission to perform its duty was total. The railroad admits that the defective switch was the cause of the accident. In view of this admission and having found that the railroad was under a duty to maintain the subject switch, which it failed to do, *it remained only for the court to direct a verdict for the plaintiff regarding liability.* The unquestioned failure of the defendant railroad to perform its duty, which failure resulted in the injury, constituted negligence as a matter of law and rendered the defendant liable, in the absence of contributory negligence on the part of the plaintiff. * * *". (Italics supplied.)

It is difficult for me to determine whether the Court has held that the defendant, "being a common carrier", was charged with an absolute duty, in accordance with the *Carrico* case, to maintain the track and switch in question; or whether the defendant, irrespective of its being a common carrier, was required to observe in relation to the plaintiff, in the circumstances, merely a duty of reasonable care in accordance with the usual legal principles pertaining to tort liability. In all deference, I suggest that the Court

may have mixed the two bases of liability. In any event, the Court has held, as a matter of law, that the defendant was charged with a duty not merely of due care, but "to maintain in a safe condition the tracks, equipment and switches over which it operates," on Weirton Steel Company's property and that such duty exists "in the same degree" even when operating on a privately-owned track and on private property of another. As I have indicated, I believe no authority can be found for the proposition that the defendant owed to this plaintiff any greater duty than a duty of reasonable care; and that the question whether the defendant properly discharged that duty, on the facts of this case, was clearly a question for the jury.

In holding that the question of causation was one of law, the Court places emphasis on the fact that it is undisputed that the switch was "out of repair" or broken and that this caused the accident. The cases cited in that connection are predicated not merely on a state of undisputed facts but also a state of undisputed facts from which "only one inference may be drawn from them by reasonable minds." See, for instance, *Griffith v. Wood,* 150 W. Va. 678, pt. 4 syl., 149 S. E. 2d 205. This well settled proposition, as it relates to negligence, has been stated clearly in many prior decisions of this Court, including the following: "The question of negligence is for the jury when the evidence relating thereto, though undisputed, is such that reasonable men may draw different conclusions therefrom." *Reilley v. Byard,* 146 W. Va. 292, pt. 4 syl., 119 S. E. 2d 650. See also *Evans v. Farmer,* 148 W. Va. 142, pts. 1 and 2 syl., 133 S. E. 2d 710. "Reasonable care is ordinarily a question for the jury." *Robertson v. Hobson,* 114 W. Va. 236, pt. 7 syl., 171 S. E. 745. In innumerable cases, the Court has held that before directing a verdict, very reasonable inference favorable to the party against whom a directed verdict is sought, fairly arising from the evidence considered as a whole, should be entertained by the trial court, and all facts should be assumed as estab-

lished which the jury might properly find from the evidence. *Duling, Admr. v. Bluefield Sanitarium, Inc.*, 149 W. Va. 567, pt. 1 syl., 142 S. E. 2d 754. In the light of the quite restricted right of a trial court to take from the jury factual questions pertaining to negligence and due care, I would like to review briefly some of the undisputed facts which, in my judgment, cause this case to be one peculiarly for jury determination.

At the outset, we should bear in mind that the accident resulted from a broken switch, as distinguished from defective railroad track. The accident occurred about two o'clock A. M. It was dark and unlighted in the area where the switch was located. The mechanism of the switch, a portion of which broke, was covered with a metal plate so that motor trucks could be driven across the track at that point. The broken part of the switch, therefore, was not visible. The defective or broken character of the switch could not have been discovered except by ''throwing the switch''. There had been no occasion to throw the switch for a long period of time because track Number 2 had not been used for about one and one-half years prior to the time of the accident. On the night in question, therefore, there was no occasion for throwing the switch, because the switch was set in such a manner as to direct the train in the desired course of travel.

I gather from the testimony that the defendant railroad company had used this track frequently, perhaps almost daily, for the purpose of moving and switching railroad cars for the benefit of Weirton Steel Company. On the night in question, the defendant's diesel locomotive was backed into Weirton Steel Company's premises to connect with nine cars, including the one which was standing on the track at a point beyond the switch. That car had been moved over the switch to that point about two days before the time of the accident. On the night in question, it was necessary to back the train, or at least a portion of it, across the switch in order to pick up the car which became

the last car on the train and the one which later became derailed. The plaintiff testified that it was not more than five minutes between the time of the train's inward trip and the time of its outward trip.

There is no evidence that the train, or any part of it, experienced any difficulty in passing over the switch two days before or on any other prior occasion. On the night in question, the train, five minutes before the accident, experienced no difficulty in passing over the switch to connect with the car which had been left standing beyond that point. Furthermore, no car except the last one on the train experienced any difficulty in passing over the switch on the return trip immediately preceding the accident. And even more significant is the undisputed fact that, on this return trip over the switch, even *the front wheels* of this very car passed over the switch without difficulty.

Milo Gray, safety director for Weirton Steel Company, arrived at the scene and inspected the switch about forty-five minutes after the accident occurred. As a witness for the plaintiff, he testified that a "tie rod" or "dog" in the switch mechanism was broken; that it was beneath the metal plate and was, therefore, not visible and could not have been discovered except by operating the switch; that the train consisted of the locomotive and nine cars; that the locomotive and all but the two last cars had been moved from the scene when he arrived; and that Weirton Steel Company's transportation track gang maintains and inspects the tracks and switches. In reference to the "tie rod" or "dog" which was broken and which caused the switch to become defective, he gave the following testimony which I consider highly significant: "* * * We don't know when this dog was broken. We don't know how long it was broken." In the light of this testimony, I believe a very reasonable inference to be drawn from the evidence in its entirety is that the switch became broken between the time the front wheels of this last car of the train passed over the switch and the time

the rear wheels of the same car passed over the switch.

James H. Baird, Jr., one of the five members of the train crew, was acting as flagman at the time of the accident. As a part of his duties, he determined that the last two cars were properly coupled to each other before the train commenced its outward trip. He was asked the following questions and gave the following answers:

"Q. Did you check the switch prior to pulling out?

"A. Yes, I did.

"Q. And you did not notice anything wrong with it?

"A. The switch looked all right to me.

"Q. Did you test it?

"A. I had no occasion to test it. I had no reason to test it.

"Q. You just looked at it visually?

"A. Yes."

It is undisputed that the train was traveling at a speed of not more than two or three miles an hour at the time of the accident, and that this was a reasonable speed under the circumstances.

For reasons stated, I believe the Court has erred in this case in holding the railroad company to a duty and a basis of liability substantially, if not wholly, in accordance with the rule of the *Carrico* case, which involved a carrier-passenger relationship.

I believe that the Court is in error also in not clearly defining the duty which the railroad company owed to the plaintiff in the circumstances of this case as a duty to exercise reasonable care. Inasmuch as the trial court treated the case as one governed by principles stated in the *Carrico* case, it follows, of course, that on the question of causation, the trial court did not

appraise the evidence on the basis of a duty of reasonable care; and it follows, therefore, that a factual determination of the question of reasonable care was not made in the trial court, either by the court or the jury. I would reverse and remand the case for a new trial on the basis of a duty of due care, because this Court in the exercise of its appellate jurisdiction, will not decide nonjurisdictional questions which were not considered and decided and which should have been decided in the trial court. *Work v. Rogerson,* 149 W. Va. 493, 510, and pt. 11 syl., 142 S. E. 2d 188, 199.