## ST. LOUIS & S. F. RY. CO. v. BARKER.

(Circuit Court of Appeals, Eighth Circuit. December 14, 1896.)

No. 615.

RAILROAD COMPANIES—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Plaintiff was engaged, with a wagon and team of oxen, in delivering railroad ties at a point on the line of defendant's railroad. He had unloaded a quantity of ties, and was returning for another load, by a road crossing the railroad tracks. From a point about 180 feet from the crossing, he had a view up

the track for 400 yards from the crossing, and, looking and listening at this point, he did not see or hear any train. Between this point and the crossing, the view of the track was obstructed until within 12 or 16 feet of the crossing. Plaintiff was familiar with the locality and with the signals given by trains, and he rode towards the crossing, seated on the reach of the wagon, which rattled some, and did not stop to listen approach, but relied on the usual signal being given by any train that might approach the crossing. When he reached a point about 12 feet from the track, he saw a train coming, at about 20 miles an hour. He then jumped from his seat, and ran to the heads of his oxen, which was his only means of stopping them, and, while he was trying to do so, the oxen were struck by the train, and thrown upon plaintiff, who was injured. The evidence as to whether the engine whistled for the crossing at the usual point, 500 yards away, which would have given plaintiff time to stop, was conflicting. *Held*, that plaintiff's failure to stop, and listen for a train, between his starting point and the crossing, was not conclusive evidence of contributory negligence, but the question was for the jury. Sanborn, Circuit Judge, dissenting.

In Error to the United States Court in the Indian Territory.

Edward D. Kenna and P. L. Soper, for plaintiff in error.
R. Sarlls, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This was a railroad-crossing case which originated in the Indian Territory. W. N. Barker, the defendant in error, who was the plaintiff below, was driving an ox team across the track of the St. Louis & San Francisco Railway Company, the plaintiff in error, at a place called "Moyer's Switch," in the Indian Territory, when he was struck by one of the defendant company's freight trains, and sustained injuries on account of which he instituted the present action. As the sole question presented by the record is whether the trial court erred in refusing to direct a verdict for the defendant, it will be necessary to state the circumstances under which the injury was sustained somewhat in detail. The proof tended to show the following facts: At the place where the accident occurred, the defendant's railroad track runs north and south, and is crossed at right angles by a country road which runs east and west. About 180 feet east of the crossing of the main track, the highway in question is also crossed by a spur track, which unites with the main track some distance north of the main crossing. At the time of the accident a large number of railroad ties were piled on the north side of the road in the angle formed by the junction of said tracks, which obstructed the view to the north to such an extent that, for the entire distance between the crossing of the spur track and the main track, a train approaching from the north could not be seen by a traveler on the highway until he was within 12 or 16 feet of the main track. The highway descends slightly as it approaches the main crossing from the east, and to the north of the crossing, for some distance, the railroad track passes through a cut which is from 3 to 4 feet deep. On the day of the accident the plaintiff was engaged in hauling railroad ties with an ox team from a point somewhere on the west side of the main track to a point on the east side of the spur track, near the high-

way, where the ties were being unloaded and delivered. He was returning to the west side of the main track, along the aforesaid road, having unloaded his wagon, and was about 12 feet from said track, when, looking up the cut, he discovered a freight train approaching from the north. He immediately jumped from his wagon, towards the head of his team, and attempted to stop them, but the oxen were in such close proximity to the track that they were struck by the engine as it passed, and were thrown upon the plaintiff. The train was running at the rate of 20 miles an hour, and perhaps faster. It gave no warning of its approach until the engine was within 252 feet of the crossing, when the engineer, discovering the oxen about to go upon the track, sounded several short, sharp whistles, which gave the first warning to the plaintiff that a train was approaching. It was usual to sound the whistle for that road crossing at a point about 500 yards north of the crossing, and the plaintiff was aware of the custom, as he had been engaged in hauling and unloading ties at that switch for about three months prior to the accident. The defendant company offered some testimony tending to show that, on the occasion of the accident, a crossing signal—two long and two short blasts of the whistle—was given at the usual place, 500 yards north of the crossing, and that the stock-alarm signal was also sounded when the engine was a short distance from the crossing, and the ox team was discovered by the engineer in close proximity to the track. There was other evidence, however, that the usual crossing signal was not given, and whether it was given or omitted was properly a question for the jury. The plaintiff testified, in substance, that when he had unloaded his wagon at the point above indicated, east of the spur track, he listened for a train, and, hearing no train, took his seat on the reach of his wagon, and started back after another load of ties; that on the way back, before crossing the spur track, he had a view up the track to a point 400 yards north of the crossing, but neither saw nor heard the approaching train; that, after passing the last-mentioned point on his way to the main crossing, he did not hear the coming train, and did not stop his team to listen for approaching trains; that his wagon rattled some, but that he did not stop his team, or get down and go forward for the purpose of looking up the track, because he supposed that, if a train was approaching, it would whistle for the crossing at the regular place, some 500 yards north of the crossing.

The principal contention is that the plaintiff should have stopped his team at some point intermediate between the two crossings, and either have listened for the sound of approaching trains, or gone forward and looked up the track to see if a train was coming; and that, because he failed to take either of these precautions, he was, as a matter of law, guilty of contributory negligence. We are not able to assent to this proposition. A traveler upon the highway, when approaching a railroad crossing, is bound to take every reasonable precaution to avoid getting hurt by a passing train. When his view is unobstructed, he must look up and down the track to see if a train is coming from either direction, and, if he fails to take such

an obvious precaution, he may justly be deemed guilty of such contributory negligence as will prevent a recovery for an injury sustained by coming in contact with a train. Railroad Co. v. Houston, 95 U. S. 697, 702; Railroad Co. v. Whittle, 20 C. C. A. 196, 74 Fed. 296, 300, and cases there cited. When intervening objects obstruct the traveler's view in either direction from the crossing, it is his duty to be more vigilant in listening for the sound of approaching trains; and a greater degree of care in this respect ought to be exercised if a gale of wind, or the rattle of vehicles, or other noises in the immediate vicinity, tend to deaden the sound of an approaching train, or render it less noticeable. Under some circumstances, it is doubtless true that a traveler upon the highway ought to stop his team before driving over a railroad crossing, for the purpose of listening more attentively or to better advantage. Stepp v. Railway Co., 85 Mo. 229, 235; Zimmerman v. Railroad Co., 71 Mo. 476, 486; Brady v. Railroad Co., 81 Mich. 616, 45 N. W. 1110. On the other hand, when a person approaches a crossing where his view is obstructed, he is entitled to assume that trainmen will do their duty,—that those in charge of a coming train will give such warning of its approach at such a distance from the crossing as the law or usage requires to be given; and, except in those cases where the conditions are such as to render it probable that the usual crossing signals will not be heard, it cannot be said, as a matter of law that a person is guilty of culpable negligence merely because he does not stop his team for the purpose of listening, or does not dismount and go forward to see if a train is approaching. A rule which would exempt railroad companies, even when crossing signals are omitted, from liability for injuries sustained at railroad crossings, in every case where the person injured fails to stop his team and listen, or to dismount and go forward for the purpose of looking up and down the track, would have an obvious tendency to make engineers less mindful of their duty. They would naturally be less diligent in giving crossing signals in the proportion that greater care was exacted of the traveling public. We think, therefore, that instead of adopting a rule making it the imperative duty of a traveler upon the highway to stop and listen, or to dismount and go forward when his view is obstructed, it would be wiser to leave the existence of that duty to.be determined by circumstances. As a general rule, the jury should be allowed to determine whether the conditions were such that, in the exercise of reasonable care, the traveler should have stopped and listened. In the case in hand we think that the trial court acted properly in refusing to declare, as a matter of law, that the plaintiff was guilty of contributory negligence, notwithstanding the admitted fact that he did not stop his team between the two crossings for the purpose of listening for the sound of approaching trains. Before leaving the place where he had unloaded his wagon, he seems to have made reasonable efforts to ascertain, by looking and listening, whether a train was in the vicinity of the crossing. He neither saw nor heard the coming train. On his way back from that point to the crossing, he was riding over a dirt road at a slow

gait, driving an ox team. There was no proof of any unusual noises in the vicinity, except such as may have been made by his wagon; and whether the noise so made was such as would naturally have induced a person of ordinary prudence to stop and listen before driving across the track was a question for the jury. It results from the foregoing views that the judgment below should be affirmed, and it is so ordered.

SANBORN, Circuit Judge (dissenting). The question is not whether the negligence of the defendant in error or that of the railroad company was the more proximate cause of the injury, but whether or not the negligence of the former contributed to that injury. The only negligence charged to the company was its failure to whistle for the crossing in proper time. Ten witnesses testified as to the whistles sounded by the engine. Eight testified that it whistled between 564 and 1,350 feet before it came to the crossing. One testified that he was a mile away, and did not know at what distance it was when he heard the whistle. The other witness was the defendant in error, and he testified that he did not hear the whistle until he saw the engine, 252 feet from the crossing. Let me remark in passing that it does not appear to me that there was any evidence here to warrant the jury in finding that the company did not whistle early enough to warn Barker of the coming train.

But conceding that the whistle was not sounded in season, that fact could not excuse any negligence of the defendant in error which contributed to his injury. In Railroad Co. v. Houston, 95 U. S. 697, 702, Mr. Justice Field, in delivering the opinion of the supreme court, said:

"The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employés in these particulars was no excuse for negligence on her part. She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger."

The rule here announced was affirmed by the supreme court in Schofield v. Railway Co., 114 U. S. 615, 618, 5 Sup. Ct. 1125, and was followed by this court in Reynolds v. Railway Co., 32 U. S. App. 577, 16 C. C. A. 435, and 69 Fed. 808, 811; and in Railway Co. v. Moseley, 12 U. S. App. 601, 6 C. C. A. 641, and 57 Fed. 921. Indeed, I understand this to be a well-established rule of law in this country. Hayden v. Railway Co., 124 Mo. 566, 573, 28 S. W. 74; Wilcox v. Railroad Co., 39 N. Y. 358; Havens v. Railway Co., 41 N. Y. 296; Baxter v. Railroad Co., Id. 502; Gorton v. Railway Co., 45 N. Y. 660; Rodrian v. Railroad Co. (N. Y. App.) 26 N. E. 741; McGrath v. Railroad Co., 59 N. Y. 468, 472.

Now, the defendant in error testified that he had been familiar with this crossing for three months; that he had been over it every day; that he knew that it was a dangerous crossing; and that he knew that a train was liable to pass over it at any time. He testified that he unloaded his wagon at a point at least 12 rods east

of the crossing; that at that point he could see a train approaching from the north for a distance of nearly 400 yards; and that between that point and a point distant only 20 feet from the crossing he could not see an approaching train at all, on account of the piles of ties. He testified that, when he had unloaded his wagon, he looked towards the north, and saw no train; that he then seated himself on the coupling pole of his wagon, turned his oxen, which were facing the east, and rode back west towards the crossing until he was so near to it that he could not stop his oxen until they were struck by the train. He had no reins upon his oxen, and no other way of stopping them except by jumping to their side, and striking them over their heads with his whip. He testified that, if he had seen a train approaching at the usual rate of speed when he looked toward the north before he turned his team, it would have passed the crossing before he would have reached it, so that a glance in that direction a day or a week before would have protected him against the danger of this crossing on this day as well as the one which he gave. He testified that the wagon rattled so that he thought it would be impossible for a man to hear a freight train coming down from the north at full speed. None of this testimony is controverted. Here, then, was a man who knew he was approaching a dangerous railroad crossing, where a train was liable to pass at any time, who, on account of obstructions, could not see an approaching train for a distance of 12 rods until he was within 20 feet of it; who could not hear its approach because his wagon rattled so; who was riding behind and driving oxen that he could not stop otherwise than by striking them over their heads; who not only did not stop or listen or look before he drove upon the crossing, but who did not even take the ordinary precaution to walk by the heads of his oxen, so that he might quickly stop them as they approached the crossing; who did not stop the rattling of his wagon, so that he could hear, and did not precede his team when they came within 20 feet of the crossing, so that he could see the approaching train, but who stupidly seated himself between the wheels of his wagon, where he could neither see nor hear, and where he could not control his team, and drove his oxen into a collision with a passing train. The general rule is that, the more dangerous a place is, the greater is the care which those who use it are required to exercise. Could this defendant in error place himself in a situation where his eyes and ears were useless, and his team out of ready control, and then drive his team upon this crossing without stopping the noise of his wagon, and without going forward where he could see the coming engine and could control his team, and still be guilty of no negligence? In other words, does a dangerous crossing exempt the traveler upon the highway not only from the duty of exercising ordinary care, but also from the duty of exercising any care? These seem to me to be the questions presented by this case, and I think they should be answered in the negative. The record appears to me to show without contradiction that the defendant in error exercised no care whatever to guard against the danger of the collision

at the crossing, and that the exercise of ordinary care on his part would certainly have prevented it. For these reasons I am of the opinion that the court below should have instructed the jury that he could not recover, and that the judgment below ought to be reversed.