# CHARLESTON.

J. J. COLEMAN *v*. NORFOLK & WESTERN RAILWAY CO. *et al.*

(No. 5564)

Submitted January 26, 1926.    Decided February 2, 1926.

1. TRIAL—*Negative and Positive Testimony as to Crossing Sig-
    nal for Jury.*

    Where there is testimony of witnesses that a locomotive
    whistle was blown or bell rung on a certain occasion, and
    equally positive testimony of others in a position to observe
    the same that neither was sounded, the question of fact must
    be determined by the jury.  (p. 682).

    (Trial, 38 Cyc. p. 1516.)

2. RAILROADS—*Matters to be Considered in Determining Trav-
    eler's Contributory Negligence Stated.*

    In determining whether or not a traveler crossing a rail-
    road at a highway crossing is guilty of contributory negli-

gence, so as to bar a recovery by him for an injury received by being struck by a train at such crossing, the jury must consider all the facts and circumstances shown in the case, including the speed of the train, the fact that such train did or did not give the crossing signals, the distance at which an approaching train could be observed by one going upon the crossing, the care observed by the injured party before entering thereon, and, if from all these facts it appears that the injured party has taken such precautions as would have been taken by one of ordinary prudence under the circumstances, he will not be held guilty of contributory negligence. (p. 685).

(Railroads, 33 Cyc. p. 981.)

3. NEGLIGENCE—*Contributory Negligence Question of Law When Reasonable Minds Can Draw But One Conclusion From Undisputed Facts.*

It is only when the facts which control are not disputed, and are such that reasonable minds can draw but one conclusion from them, that the question of contributory negligence barring recovery becomes one of law for the court. (p. 687).

(Negligence, 29 Cyc. p. 631.)

4. RAILROADS—*Contributory Negligence Held for Jury on Conflicting Evidence.*

Where, as in this case, the evidence is conflicting, and there are different inferences that may be drawn by different minds, the question of contributory negligence of the injured party is one for the jury. (p. 687).

(Railroads, 33 Cyc. p. 1111.)

5. APPEAL AND ERROR—*On Appeal, Supreme Court of Appeals Must Take View of Evidence Most Favorable to Verdict, and Give it Strongest Probative Force of Which it Will Admit.*

On appeal, this court must take the view of the evidence most favorable to the verdict, and give it the strongest probative force of which it will admit. (p. 686).

(Appeal and error, 4 C. J. § 2719.)

6. EVIDENCE—*Question of Weight to be Given Photograph is Matter for Jury to be Determined, by Tests Used in Weighing Other Evidence.*

The question of what weight should be given to a photograph, after its proper verification and admission in evidence, is a matter for the jury to be determined by the tests used in weighing other evidence. (p. 685).

(Evidence, 22 C. J. § 1115.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mercer County.

Action by J. J. Coleman against the Norfolk & Western Railway Company and others. Judgment for plaintiff, and defendant named brings error.

*Affirmed.*

*Reynolds & Reynolds, A. W. Reynolds,* and *F. M. Rivinus,* for plaintiff in error.

*John R. Pendleton,* for defendant in error.

WOODS, JUDGE:

The plaintiff, while crossing defendant's tracks at a highway crossing in the Town of Iaeger, was struck by a train operated by the defendant, as a result of which he sustained very severe personal injuries and his automobile was completely destroyed. He brought this action to recover damages for the injuries thus sustained, and from a judgment of the circuit court awarding him compensation therefor, this writ of error is prosecuted.

The highway crosses the tracks at right angles east of the station. Just a short distance east of the crossing the railroad curves around a steep bluff of the mountain, sufficiently to obstruct the view thereof by one approaching the crossing from the direction in which the plaintiff was approaching it. According to the testimony of the plaintiff he had driven into the town on that morning for the purpose of delivering Masonic lodge emblems that he had previously sold to the residents therein. He parked his car about twenty-five or thirty feet to the north of the crossing. After making one delivery he came back to his car, which was pointed toward the crossing, with the intention of going across to the other side of the town to deliver other emblems. He did not know whether there were any trains due or not, nor had he heard any whistle or other signal of any. He got in the car, started the engine and proceeded in low gear down to the crossing at a very slow rate of speed, looking in both directions for approaching trains, and listening for them, but looking more toward the left (the direction from which the train came

which struck him) because the view in that direction was not so great. Just before entering upon the track he looked to the right and saw nothing, then looked to the left, and saw the approaching train. The train seemed to be running at an unusual rate of speed, and the plaintiff thinking that he could not make it across the track, his front wheels having only mounted the first rail, stopped his car and put it in reverse in an effort to back off the track, and was moving backwards, when the train struck it. At no point from the time he started his car until he reached the track could he have obtained a better view of the railroad in either direction by stopping.

The negligence charged in the declaration, and relied on for recovery, is that the train doing the injury was running at an unusual rate of speed and that it did not give warning of its approach to the crossing by ringing the bell or sounding the whistle, as required by section 61 of chapter 54 of the Code. This statute provides that the bell shall be rung or the whistle sounded at a distance of at least sixty rods from the place where the railroad crosses any public street or highway, and be kept ringing or whistling for a time sufficient to give due notice of the approach of the train before such street or highway is reached. Divers witnesses testified that the train seemed to be running at an unusual rate of speed that morning. Most of them gave it as their opinion that it was making twenty-five to thirty miles per hour. While the engineer placed the speed at fifteen to eighteen miles per hour, the fireman fixed the speed at "about twenty or twenty-five miles an hour," and said that the engine was not pulling but that the train was "drifting," and had been for a half mile above the crossing.

Under the instructions of the court, in order to find for the plaintiff at all the jury were required to find that the statutory crossing signal was not given, so that the jury's verdict necessarily found that the whistle was not blown nor the bell rung, when the crossing was approached. The plaintiff introduced a great number of witnesses, all of whom swear that no crossing signal was given. The town sergeant, who met all trains at the station, said that he heard it blow

for the station over a mile away and that it did not whistle again until it gave the "cattle whistle" on sighting the plaintiff on the crossing. One witness, who was walking up the track and met the train at the place it should have given the crossing signal testifies to its failure to do so and remarked to his companion concerning this fact. Another witness who was expecting the arrival of a friend on that train was intently listening and heard nothing but the station signal and later the distress signal. A woman who lived near the crossing signal post said that she went to the door as the train went by to see if any of her children were down about the railroad, that the train did not blow for the crossing and that she said to one present, "I wonder why it didn't blow," and that then she heard it blow the danger signal. Others testified in like strain. On the contrary the engineer, fireman and others testified that the whistle was blown for the crossing. From the evidence we cannot say that the finding of the jury is not supported by the evidence. To undertake to do so would be to invade the province of the jury. *Kelly* v. *K. & M. Ry. Co.*, 99 W. Va. 568; *Thomas, Exr.* v. *K. & M. Ry. Co.*, 99 W. Va. 718; *Carnefix* v. *Railroad Co.*, 73 W. Va. 534; *Railroad Co.* v. *Bryant*, 95 Va. 213.

The defense insisted upon is that the plaintiff was negligent in approaching and entering upon the crossing—guilty of contributory negligence. He who would rely on this defense to defeat recovery must prove, by a preponderance of the evidence, the fact of negligence, and that it was the proximate cause of the injury. *Carnefix* v. *Railroad Co.*, *supra; Carrico* v. *Railroad Co.*, 39 W. Va. 86. Two witnesses for the defendant stated that they saw the plaintiff approaching the track in his car and called to him to watch out for Number 9. They could not say that the plaintiff heard them. The plaintiff said that he heard no such warning. Witnesses for both plaintiff and defendant unite in confirming the plaintiff's statement that he approached the crossing very slowly.

The defendant would have the court declare as a matter of law that the plaintiff was guilty of contributory negligence, and that the court erred in refusing its instruction to that

effect, upon the ground that he came upon the crossing in full view of the approaching train, which could have been seen by the plaintiff from a point ten feet from the crossing as he approached it, for a distance of at least three to four hundred feet. Defendant rests its claim as to this being the distance solely upon certain photographs introduced on the trial and the testimony of the photographer who took them.

We are asked to disregard plaintiff's evidence, as well as that of the defendant's engineer, as contrary to the actual fact as to the distance the train could be seen. In other words, the photographs are relied on as unimpeachable evidence. In *Cunningham* v. *Fair Haven & W. R. Co.*, 72 Conn. 244, the court said: "The proof of accuracy varies with the nature of the evidence the photograph is offered to supply. * * * But when it is offered as representing * * * any object where slight differences of height, breadth or length are of vital importance, much more convincing proof should be required. It is common knowledge that as to such matters, either through want of skill on the part of the artist, or inadequate instruments or materials, or through intentional and skillful manipulation, a photograph may be not only inaccurate but dangerously misleading. *Hynes* v. *McDermott*, 82 N. Y. 41; *Geer* v. *Missouri L. & M. Co.*, 134 Mo. 85; *Eborn* v. *Zimpelman*, 47 Tex. 503." In the case at bar the photographs were not offered as a mere general representation of the *locus in quo*. Their chief relevancy as evidence was to show the distance that an approaching train could be seen from a point north of the west bound track. There was no objection to their admission. The only question here is the weight of the statement of the photographer as to the distance from the camera to the man standing on the track. He made no assertion that there was made any actual measurement of the distance by himself or by another in his presence. He said they were taken under the supervision of Stanley, the claim adjuster, for the defendant railway company. This same claim adjuster later appeared upon the witness stand in the case but made no allusion to the photographs. The plaintiff testified that an approaching train from the east could only be observed twenty-five or thirty yards east of the cross-

ing.   The engineer was asked, ''How far could you see this · crossing as you came around this curve, how far away was it?'' and replied, ''You might see it a hundred feet.''   Q. ''You could see it about one hundred feet?''   A. ''Yes sir, at least a hundred feet.''

The photographs are admitted in evidence on the principle that ''diagrams, drawings, and photographs are resorted to only because. the witness cannot with language as clearly convey to the minds of the court and jury the scene as the light printed it on the retina of his own eye at the time of which he is testifying.''   Jones Ev. § 581.   They are dependent for their convincingness upon the skill of the person making them and the truthfulness of the one vouching for them.   *Lake Erie Ry. Co.* v. *Wilson*, 189 Ill. 89.   Their reliability is to be determined by the test used in weighing other evidence.   *Higgs* v. *Minneapolis Railroad Co.*, 16 N. D. 446, 15 Ann. Cas. 97. They must be shown by extrinsic evidence to be faithful representations of the place or subjects as it existed at the time involved in the controversy.   *Stewart* v. *St. Paul Ry. Co.*, 78 Minn. 110.   The accident here occurred on the first day of October, 1924, and the photographs under consideration were not made until the fifth day of May, 1925.   The record is barren of any attempt to show that the scene pictured was as it obtained at the time of the casualty.

In the absence of proof of any measurement, it is obvious that the photographer's testimony on this point, would be on the same plane with that of the plaintiff and engineer—none basing their opinion on actual measurement.   At the best it can only be said, if at all, that measurement might be inferred from the facts actually stated by the witness.   This would be only a permissible deduction which the jury is entitled to draw from the evidence, and which has no probative effect, other· than the jury is pleased to give it.   *Puget Sound Elec. Ry. Co.* v. *Benson*, 253 Fed. 710.   Nothing in the nature of this case or the surrounding circumstances can legally screen the defendant from the effect of the rule which jurisprudence applies to litigants who fail to produce important testimony easily within their reach, and presumably under their control.   Thus, a conflict of testimony was made on this point

for jury determination. According to the principles we have announced the question as to what weight should be given to a photograph after its verification and admission in evidence is a matter for the jury. *Wetherell* v. *Hollister*, 73 Conn. 622. Against the verdict of the jury we are not at liberty to adopt the testimony of the photographer and the photographs as giving the great and conclusive weight asked for it by the defendant. In no case have we found its contention supported. Their weight should be left to the jury to be determined under the same tests that all other evidence is weighed.

On appeal, the reviewing court must take the view of the evidence most favorable to the verdict, and give it the strongest probative force of which it will admit. *Rogers* v. *Phillips*, 217 Mass. 52. This would put the distance of the on-coming train as it rounded the curve and came within the vision of the plaintiff at one hundred feet—at the rate that we have shown it to be moving—less than three seconds before the impact.

In approaching a railroad crossing the injured party is not deemed guilty of contributory negligence because he did not exercise the greatest degree of diligence which he could have exercised, but only if he failed to exercise such care as a prudent man approaching such a place would. Whether he ought to stop in a given case is a question for the jury to decide, in view of the circumstances developed. *City of Elkins* v. *Railway Co.*, 76 W. Va. 733. The trial judge correctly stated the law in his instructions to the jury that it was the duty of the plaintiff "to stop, look and listen, if necessary, and to take all reasonable precaution for his safety, before entering upon the crossing * * * and that any failure * * * to observe and take such precautions was contributory negligence which defeats his right to recovery in this case." This is the rule in this state. *Kelly* v. *K. & M. Ry. Co., supra; Thomas, Exr. v. K. & M. Ry. Co., supra.* The same salutory rule obtains likewise in the courts of nearly all the states of the Union. It was for the jury to apply the instructions to the particular facts. In *Canterbury* v. *Director General of Railroads*, 87 W. Va. 233, it is said: "In determining whether or not a traveler crossing a railroad at a highway crossing is

guilty of contributory negligence, so as to bar a recovery by him for an injury received by being struck by a train at such crossing, the jury must consider all of the facts and circumstances shown in the case, including the speed of the train, the fact that such train did or did not give the crossing signal, the distance at which an approaching train could be observed by one going upon the crossing, the care exercised by such injured party before entering thereon, and if from all these facts it appears that the injured party has taken such precautions as would have been taken by one of ordinary prudence under the circumstances, he will not be held guilty of contributory negligence.'' The evidence was conflicting on each of these controlling points. According to the jury's finding the defendant was negligent in the performance of its statutory duties to blow the whistle or ring the bell. The authorities say that the traveler has a right to expect that these duties will be performed; especially is this true of a crossing such as is involved in this case. *City of Elkins* v. *Railway Co., supra.* Also, the train was ''drifting'' at the rate of twenty-five miles per hour. If the plaintiff's testimony was true, he used all his faculties diligently, and did everything that any prudent man would have been likely to do in approaching the track. But because of the obstruction of the mountain, the train could not have been seen by him, only when too late to escape a collision. The jury was at liberty to credit his narrative, and to weigh among the probabilities in his favor the exertion of that impulse of self-preservation which, in the case of a sober and prudent man, is always to be presumed.

We are firmly bound to the doctrine that when the evidence is conflicting, and there are different inferences that may be drawn by different minds, the question of contributory negligence of the injured party is one for the jury. *Carnefix* v. *R. R. Co., supra; City of Elkins* v. *Railway, supra; Hicks* v. *R. Co.,* 164 Mass. 424; *Atchinson, etc. R. Co.* v. *Hague,* 54 Kan. 284; *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408; *Ladouceur* v. *Northern Pac. R. Co.,* 4 Wash. 38; *Nichols* v. *C. B. & Q. R. Co.,* 44 Colo. 501; *Wallenburg* v. *Railway Co.,* 86 Nebr. 642; *Dickinson* v. *Erie R. Co.,* 81 N. J. L 464;

*Wichita, etc. R. Co.* v. *Davis,* 37 Kan. 743; *Continental Imp. Co.* v. *Staed,* 95 U. S. 161; *Sealey* v. *Southern Ry. Co.,* 151 Fed. 736; *Calhoun* v. *Pennsylvania R. Co.,* 223 Pa. St. 298; *Henry* v. *C. C. C. & St. L. Ry. Co.,* 236 Ill. 219; *Dougherty* v. *C. M. & St. P. Ry. Co.,* 20 S. D. 46; *New York, etc. R. Co.* v. *Moore,* 105 Fed. 725; *St. L. & S. F. Ry. Co.* v. *Barker,* 77 Fed. 810. This Court in *Krodel* v. *B. & O. R. Co.,* 99 W. Va. 374, held that it is only when the facts which control are not disputed and are such that reasonable minds can draw but one conclusion from them, that the question of contributory negligence barring recovery is one of law for the court. Such is not the case here.

It is urged that three several instructions were improperly given for the plaintiff, and that one, aside from the one directing a verdict which has already been adverted to, was improperly refused for the defendant. These instructions have been carefully examined. We find no error in the instructions given for the plaintiff. They state the law applicable to the case from his viewpoint. The principles contained in the one refused for the defendant were embodied in others given at its instance, wherein the question of contributory negligence was fully and properly submitted to the jury.

It follows from what we have said that the judgment of the circuit court must be affirmed.

*Affirmed.*