SYLVIA WORKMAN, *Administratrix of the Estate of* RAY WORKMAN, *Deceased*

*v.*

J. F. WYNNE

(No. 10814)

Submitted September 11, 1956. Decided October 30, 1956.

*D. Grove Moler,* for plaintiff in error.

*Bailey, Worrell & Bailey, C. S. Worrell, James C. Lyons,* for defendant in error.

HAYMOND, JUDGE:

In this action of trespass on the case instituted in the Circuit Court of Wyoming County, the plaintiff, Sylvia Workman, Administratrix of the Estate of Ray Workman, deceased, seeks to recover damages from the defendant, J. F. Wynne, for the wrongful death of Ray Workman caused by the alleged negligence of the defendant. Upon the trial of the case the jury returned a verdict in favor of the plaintiff for $10,000.00 on September 30, 1955. The circuit court overruled the motion of the defendant to set aside the verdict and grant him a new trial and on November 5, 1955, entered final judgment for the plaintiff for the amount of the verdict with interest and costs. To that judgment this Court granted a writ of error and supersedeas upon the petition of the defendant on March 12, 1956.

The plaintiff's intestate, Ray Workman, a young unmarried man about twenty four years of age, sustained the injuries which resulted in his death in a collision between a 1948 Kaiser Frazier sedan automobile owned and driven by him and a 1953 Chevrolet two door sedan automobile owned by the West Virginia Department of Public Safety and operated by the defendant J. F. Wynne, a member of the department on patrol duty at the time. The collision occurred about nine thirty o'clock on Saturday night, October 23, 1954, on the intersection of a public highway known as West Virginia Route No. 10 with a private unimproved road at a point approximately four miles west of Pineville in Wyoming County.

The section of West Virginia Route No. 10 where the collision occurred is straight for a distance of approximately 1300 feet from the crest of a two per cent grade to the intersection of a private unimproved road, known as the Lum Hollow Road, where the collision occurred and beyond that point in an easterly direction toward Pineville for an additional distance of 1150 feet. There is another private road which intersects the highway about 600 feet west of the Lum Hollow Road intersection. The

improved portion of the highway is of a uniform width of nineteen feet. The width of the berm on the north or left side of the highway in the direction of Pineville is approximately five feet and the width of the berm on the opposite or right side of the highway varies from eleven feet to sixteen feet.

About nine o'clock on the night of the collision the defendant J. F. Wynne, a member of the department of public safety who at the time was stationed at Mullens, accompanied by W. A. Gosnell, also a member of the department of public safety, Wilburn Bolt, Chief of Police of Pineville, James Hicks, a constable of one of the districts of Wyoming County, and Max Goode, left the office of the county jail, where they had been together for a short time, for the purpose of patrolling roads in Wyoming County in the Chevrolet automobile of the department. The defendant and Gosnell occupied the front seat and Hicks, Bolt, and Goode occupied the rear seat of the automobile. After going to a place known as the Annetta Drive-In where they drank some coffee they proceeded through Pineville westward towards Oceana on West Virginia Route No. 10. A short distance beyond and west of a place known as the Pineville Drive-In Theater, the entrance to which is located about 1,035 feet west of the intersection of the Lum Hollow Road and near the crest of a two per cent grade of the highway, the defendant, who was driving the automobile, turned it and started back in the direction of Pineville. After the automobile had passed the Pineville Drive-In Theater and when it was approximately one thousand feet from the Lum Hollow Road, the defendant decided to turn the automobile at the intersection to return to the Pineville Drive-In Theater, and at some point between one thousand feet and seventy five feet from the intersection he placed in operation the mechanical flashlight signal device to indicate that he intended to make a left turn at the intersection and he continued its operation until the automobile entered the intersection. As the a u t o m o b i l e approached the intersection with the signal working its

speed was about twenty five miles per hour until a short distance from the intersection when its speed decreased to between five and fifteen miles per hour. The automobile was in good mechanical condition, it was equipped with standard headlights, which were burning, and rear lights, and it carried a rear West Virginia State Police license plate. Between the Pineville Drive-In Theater and the Lum Hollow Road intersection it was immediately followed by another automobile, the headlights of which were also burning. This automobile did not attempt to pass the automobile driven by the defendant. Both automobiles were travelling to the right of the center line of the road until the automobile driven by the defendant turned to the left to enter the intersection.

As the automobile driven by the defendant entered the intersection of the Lum Hollow Road and when it had reached a point about four feet to the left of the edge of the hard surface portion of the highway it was struck near the left front door by the front end of the Kaiser-Frazier automobile owned and driven by Ray Workman in which a young man named Robert Stewart was also riding in the front seat at the time of the collision. The automobile driven by the defendant was knocked or pushed forward several feet, was turned around, and came to a stop in a diagonal position with both front wheels on the hard surface part of the road and the rear wheels, or one of them, on the berm. The defendant and Gosnell were knocked or thrown from the automobile and each of them was injured.

The automobile driven by Workman proceeded from the point of the collision along the left berm of the highway for a distance of approximately eighty feet, passed beyond a culvert over a ditch or small run, struck a tree stump and came to rest on its side in the run with its front end pointing in the opposite direction from that in which it was travelling when the impact occurred. Ray Workman was killed and Robert Stewart received severe injuries which confined him in a hospital for a period of

thirteen days. Both automobiles were wrecked in the collision. Robert Stewart instituted an action against Wynne which was tried in June 1955, before the trial of this case but, of course, the result of the action prosecuted by Stewart does not appear from the evidence.

When the automobile driven by Ray Workman, travelling behind the automobile driven by the defendant and the automobile immediately following it approached the intersection of the Lum Hollow Road, it was running at a speed of fifty to fifty five miles per hour and when it came to within about 112 feet from the intersection of Lum Hollow Road it passed to the left of the center line and continued on a slight diagonal on that side of the highway until it went on the berm at or near the scene of the collision. Its course was clearly indicated by two parallel tire marks which extended from the point where it crossed the center of the highway to the place where the collision occurred.

' The automobile which was behind the automobile driven by the defendant when the collision occurred proceeded on its way before its identity or the identity of its occupants could be discovered by the persons who remained at the scene of the wreck.

The foregoing facts are not disputed. There is, however, a conflict in the evidence as to whether the headlights on the automobile driven by Ray Workman were burning, whether the horn on that automobile was sounded, and whether Ray Workman was under the influence of intoxicating liquor at the time of the collision.

The principal witness produced by the plaintiff with respect to the manner in which the collision occurred was Robert Stewart. He testified that as the automobile driven by Ray Workman passed the Pineville Drive-In Theater and approached the intersection of the Lum Hollow Road it was travelling at a speed of fifty to fifty five miles per hour; that he did not see the other automobile

behind the automobile driven by the defendant until the automobile driven by Ray Workman started to pass the other automobile; that he did not see the automobile driven by the defendant until it turned into the intersection when the collision occurred; that the automobile driven by the defendant turned to the left "all at once" as the automobile driven by Ray Workman started to pass the automobile driven by the defendant; that the automobile immediately following the automobile driven by the defendant was a dark colored 1950 Chevrolet and was travelling at a distance of about one car length behind the automobile driven by the defendant; that he saw the light on the dashboard of the automobile driven by Ray Workman; that the headlights on the automobile driven by the defendant and the other automobile were burning; that Ray Workman sounded the horn on his automobile "for" the automobile behind the automobile driven by the defendant; that he did not notice any tail light on the automobile driven by the defendant; that he did not see any signal given by it to indicate that it was about to turn to the left; that the automobile driven by Ray Workman "ran into" the automobile driven by the defendant; and that he did not remember if Ray Workman used the brakes on his automobile to check its speed. He admitted that he had drunk three bottles of beer between seven o'clock and nine o'clock that evening but he denied that he was intoxicated or that he told the state policemen who later interviewed him that he was intoxicated. He also testified that he did not see Ray Workman drink any intoxicants while he was with him for about thirty minutes or an hour at a drive-in establishment from which they began the trip that in a short time ended in the collision.

Bob Carothers, a witness in behalf of the plaintiff, who was walking on West Virginia Route No. 10 at a point east of the scene of the collision, testified that he did not see the collision but heard it and that just before the crash occurred he heard the sound of a horn.

Robert Browning, a witness produced by the plaintiff,

who lived in a house about 300 feet east of the scene of the wreck, testified that he heard but did not see the collision; that he immediately went to the scene of the wreck; that he saw the automobile driven by the defendant; that its two front wheels were on the pavement of the highway and the right rear wheel was off the highway; that he also saw the automobile driven by Ray Workman and that it was located in a drain about 150 feet from his house and between it and the main road.

Cortland Brumfield, another witness in behalf of the plaintiff, who stated that he was at the county jail when the defendant, and Gosnell, Bolt, Hicks and Goode were present before they left the jail on the night the collision occurred, was permitted to testify, over the objection of the defendant, that he observed them together in the kitchen of the jail; that while they were there he saw a pint bottle which was about half full of whisky in the kitchen; that shortly after they left he went to the kitchen and noticed that the same bottle was empty. He also testified that he did not see the defendant or any of his companions drink any whisky while they were in the jail on that occasion.

The defendant, and Bolt and Hicks, who were produced as witnesses in his behalf, each testified that neither the defendant nor any of his companions drank any whisky while they were at the jail on the night of the collision; that they did not see any bottle containing whisky at the jail on that occasion; and that they did not see Brumfield at the jail while they were there.

The defendant testified that as the automobile driven by him passed the entrance of the Pineville Drive-In Theater he operated the signal device to indicate a turn to the left at the intersection of the Lum Hollow Road; that when he did so a green light flashed on the left side of the panel of the automobile; that the indicator made a clicking noise; that the light flashed and the clicking noise continued until the automobile reached the intersection; that before he turned the automobile to the left he

saw one automobile behind the automobile he was driving; that he detected its presence by the rear view mirror in the automobile driven by him; that he saw only one automobile; that he did not at any time see the reflection of the lights of any other automobile; that he did not hear the sound of any horn; and that the only sound he heard was a "tremendous roaring at my left door."

W. A. Gosnell, who was seated in the front seat of the automobile driven by the defendant, testified that after the automobile turned near the Pineville Drive-In Theater and started back toward Pineville there was one automobile behind it which did not pass the automobile driven by the defendant; that the other automobile was approximately 300 feet behind the automobile driven by the defendant; that the defendant operated the signal to indicate a left turn after the automobile passed the entrance to the Pineville Drive-In Theater; that while the signal was in operation a green light flashed on the dashboard; that the defendant kept the signal in operation until the collision occurred; that the headlights on the automobile driven by the defendant were burning; that he did not hear the sound of any horn or see any lights on any automobile except the automobile immediately behind the automobile driven by the defendant; and that he did not discover the presence of the automobile driven by Ray Workman until he heard it immediately before it hit the automobile driven by the defendant.

Wilburn Bolt, who was riding in the rear seat of the automobile driven by the defendant, testified that when the automobile was about fifty yards from the Lum Hollow Road the defendant started the operation of the signal to turn to the left; that at that time the witness looked back and saw only one automobile which was following the automobile driven by the defendant; that both automobiles were travelling at about the same speed; that the headlights on the automobile driven by the defendant were burning; and that the witness did not hear the

sound of any horn before the automobile driven by the defendant was struck by the automobile driven by Ray Workman.

James Hicks, who was also riding in the rear seat of the automobile driven by the defendant, testified that about seventy five or one hundred feet from the intersection where the collision occurred the defendant operated the signal to turn to the left; that the witness heard a clicking noise made by the signal; that there were two automobiles behind the automobile driven by the defendant; that he saw lights shining behind the automobile in which he was riding; that the headlights on the automobile driven by the defendant were burning; that no horn was sounded and there were no lights on the automobile that hit the automobile driven by the defendant; that as the automobile driven by the defendant started to cross the highway to enter the intersection the witness heard "tires screaming"; and that "By that time the car had hit."

Max Goode, who was also riding in the rear seat of the automobile driven by the defendant and whose hearing is impaired, testified that because of his position in the automobile he could not see the mechanical signal and that he was unable to hear it; and that he did not see the automobile driven by Ray Workman before the collision occurred.

The defendant offered four witnesses to show that during the afternoon and the evening of the day of the collision Ray Workman had been drinking beer and that he was under the influence of intoxicating liquor at and shortly before it occurred. Gay Brewster, a married woman, testified that about six o'clock or six thirty o'clock in the evening of the day on which the collision occurred she and Ray Workman drank beer together at a place known as the Jesse Drive-In; that they left that place and returned there about a half hour later; that when they were at the Jesse Drive-In the second time and had been drinking beer Ray Workman "was just stagger-

ing around there." Hazel Blankenship testified that she was with Ray Workman at the Jesse Drive-In between three thirty o'clock and four o'clock that afternoon; that she saw him there again about eight o'clock or eight thirty o'clock in the evening of the day of the wreck; that Gay Brewster and two other men were also present; that Ray Workman was "pretty high"; that he staggered when he got in his automobile; and that when they were at the Jesse Drive-In the second time she and he drank beer together.

The defendant offered to prove by these two witnesses that during a trip from the Jesse Drive-In to a place known as Turkey Ridge and a place known as Sluss's store and the return trip to the Jesse Drive-In Ray Workman drove his automobile "fast" and that it was "zigzagging"; that he drove it into a ditch; that they begged him to let them out of the automobile; and that Gay Brewster did finally jump from the automobile. The defendant also offered to prove by Hazel Blankenship that Ray Workman had a bottle of whisky and drank some of the whisky while he was at the Jesse Drive-In about four o'clock or four thirty o'clock in the afternoon of that day. Upon objection by the plaintiff the circuit court refused to permit these witnesses to testify to any of those matters.

Janet Brown, a waitress who was formerly employed at the Jesse Drive-In, testified that she saw Ray Workman there shortly after seven o'clock on the night the collision occurred and that he drank beer while he was there. She stated that "He seemed to be drinking heavy" but that she could not swear that he was intoxicated. Edith Gibson, the proprietress of the Jesse Drive-In, testified that Ray Workman was there about ten or fifteen minutes before she learned that the collision had occurred; and that she saw him drink beer which she sold him but that she would not say that he was intoxicated.

In rebuttal the plaintiff produced six witnesses to show that Ray Workman was not intoxicated during a period

of approximately two hours before the collision occurred. Garnet Birley, who operated an automobile service station at a place called Jesse, testified that between eight thirty o'clock and nine o'clock on the night of the collision he repaired a gear shift selector on the automobile of Ray Workman at the service station; that in making the repairs the automobile was raised to a height of four and a half to five feet; that it was necessary for someone to be in the automobile after it was raised to that height; that Ray Workman, by using a stool and stepping on the shoulders of the witness, climbed into the automobile while it was at that elevation; that he jumped from the automobile when the repairs were completed; that he remained at the service station for about twenty minutes; that while Ray Workman was there the witness observed and talked to him; and that he could not say that Ray Workman was intoxicated to any extent at that time. Charlie Stewart, who was well acquainted with Ray Workman, testified that he was at the service station when the repairs were made to the automobile; that he talked to Ray Workman and observed his actions; and that he could not say that he was intoxicated to any extent. Henry P. Milam testified that he saw Ray Workman at an automobile service station at a place called Matheny about seven thirty o'clock on the night the collision occurred; that the witness sold him gasoline for which he charged two dollars; that Ray Workman paid for the gasoline with a ten dollar bill and received eight dollars in change from the witness; and that Ray Workman was not intoxicated to any extent at that time. Jimmy Adams, who had known Ray Workman for about eight years, testified that he saw him at the Jesse Drive-In about eight thirty o'clock on the night of the collision; that he remained there about thirty minutes; that the witness did not see him drink any beer or other intoxicants while he was there; and that he was not intoxicated to any extent at that time. Eugene Hendricks testified that he had known Ray Workman for a few days; that he saw him at the Jesse Drive-In for about five minutes

on the night the collision occurred; that he did not see Ray Workman drink any beer; that he would not say that Ray Workman was intoxicated when the witness saw him; that there was nothing about him or his conduct to indicate that he was intoxicated; and that he appeared to the witness to be perfectly normal. John Allen, who was well acquainted with Ray Workman, testified that he saw him at the Jesse Drive-In about ten or fifteen minutes before the witness learned that the collision had happened; that Ray Workman had been in the Jesse Drive-In for about ten minutes; that the witness talked to him while he was there; that Ray Workman did not drink any intoxicants; that his conduct did not indicate that he was intoxicated; and that in the opinion of the witness he was not intoxicated at that time.

At the conclusion of all the evidence introduced upon the trial of the case the defendant moved the court to strike the evidence in behalf of the plaintiff and direct the jury to return a verdict in favor of the defendant. This motion was overruled by the circuit court.

The defendant assigns as error the action of the circuit court (1) in overruling the motion of the defendant to direct a verdict for the defendant because the evidence fails to establish actionable negligence upon the part of the defendant and because the evidence shows negligence as a matter of law upon the part of Ray Workman which proximately caused or contributed to the collision which resulted in his death; (2) in admitting the testimony of the witness Brumfield relating to the whisky in the room of the jail where he said he saw the defendant and his companions on the night of the collision a short time before it occurred; (3) in excluding the testimony of Gay Brewster and Helen Blankenship concerning the manner in which Ray Workman operated his automobile during the afternoon and the evening of the day of the collision when he drank beer at different places with them or in their presence; and (4) in overruling the motions of the defendant to declare a mistrial and to set aside the ver-

dict because of certain alleged improper and prejudicial statements by one of the attorneys for the plaintiff in his argument to the jury.

The evidence as to whether Ray Workman sounded the horn on his automobile and as to whether its headlights were burning at or before the collision occurred is conflicting. As already indicated, Robert Stewart testified that Ray Workman sounded the horn and that the lights on the dashboard of his automobile were burning. Bob Carothers testified that he heard the sound of a horn. On the contrary James Hicks testified that no horn was sounded and that there were no lights on the automobile that hit the automobile driven by the defendant. Upon this conflict in the evidence the question whether the defendant was guilty of negligence in turning to the left to enter the intersection was a question of fact to be determined by the jury as was also the question whether the defendant, in the exercise of ordinary care, should have seen or heard the automobile driven by Ray Workman in sufficient time to have avoided the collision by waiting until the automobile driven by Ray Workman had passed the automobile driven by the defendant before he turned it to the left and drove it upon the intersection. When the evidence is conflicting, or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them, the questions of negligence and contributory negligence are for the jury. *Davis* v. *Sargent,* 138 W. Va. 861, 78 S. E. 2d 217; *Wilson* v. *Edwards,* 138 W. Va. 613, 77 S. E. 2d 164; *Thrasher* v. *Amere Gas Utilities Company,* 138 W. Va. 166, 75 S. E. 2d 376; *Daugherty* v. *Baltimore and Ohio Railroad Company,* 135 W. Va. 688, 64 S. E. 2d 231; *Isgan* v. *Jenkins,* 134 W. Va. 400, 59 S. E. 2d 689; *Davis* v. *Pugh,* 133 W. Va. 569, 57 S. E. 2d 9; *Gilkerson* v. *Baltimore and Ohio Railroad Company,* 129 W. Va. 649, 41 S. E. 2d 188; *Yuncke* v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410. It is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting; and the

finding of the jury on such facts will not be disturbed by this Court. *Davis* v. *Sargent,* 138 W. Va. 861, 78 S. E. 2d 217; *Gilkerson* v. *Baltimore and Ohio Railroad Company,* 129 W. Va. 649, 41 S. E. 2d 188; *Yuncke* v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Thorn* v. *Addison Bros. and Smith,* 119 W. Va. 479, 194 S. E. 771. For these reasons, the finding of the jury by its verdict that the defendant was negligent will not be disturbed on this writ of error.

With respect to contributory negligence upon the part of Ray Workman, however, the evidence is not conflicting. The undisputed evidence shows that the defendant indicated his intention to turn the automobile driven by him to the left at the intersection and operated the mechanical signal device in sufficient time to warn Ray Workman that the defendant intended to turn the automobile to the left at or near the intersection. The statement of Robert Stewart that he did not see the signal given by the defendant being negative in character does not controvert the affirmative evidence in behalf of the defendant that the signal was given and that it continued for a distance of at least seventy five feet from the point of the collision. *Jones* v. *Virginian Railway Company,* 115 W. Va. 665, 177 S. E. 621; *Cavendish* v. *Chesapeake and Ohio Railway Company,* 95 W. Va. 490, 121 S. E. 498.

Though the evidence conflicts as to whether Ray Workman was intoxicated at and immediately before the collision, the evidence is undisputed that he drank a large quantity of beer during the afternoon and the evening of the day of the collision. That the beer he drank affected at least to some extent the manner in which he drove his automobile as it approached the intersection where the collision occurred is clearly established.

The tire marks on the highway indicate that Ray Workman, when his automobile was approximately 112 feet from the point of the collision, used its brakes in an effort to check its speed but that, notwithstanding his attempt to do so and despite the statement of Robert Stew-

art that he did not know whether Ray Workman used the brakes, the automobile proceeded at a rate of fifty to fifty five miles per hour according to the testimony of Robert Stewart until the collision occurred. That it was travelling at an excessive rate of speed under the conditions disclosed by undisputed evidence is clearly established by the violence of the impact, the damage caused to both automobiles, the distance the automobile driven by the defendant was pushed or knocked forward, and the distance the automobile driven by Ray Workman travelled beyond the point of the collision. If Ray Workman saw the two automobiles in front of him at or before he steered it to the left of the center of the highway at a point indicated by the tire marks, as in the exercise of due care and by keeping a proper lookout he should have done, that section of the highway being straight with no obstruction to prevent his view of the two automobiles in front of him, or if, as did Robert Stewart, he failed to observe the automobile immediately following the automobile driven by the defendant, until he started to pass it, and did not see the automobile driven by the defendant, until the automobile driven by Ray Workman was in the act of passing it, he was, in either event, guilty of negligence which proximately caused or contributed to the collision which resulted in his death. If he had kept a proper lookout and had exercised due care in the operation of his automobile, he should have seen both automobiles in front of him and the signal given by the defendant that he intended to turn the automobile driven by him to the left at the intersection, in time to avoid the collision by reducing the speed of his automobile. All the foregoing facts and circumstances are established by evidence which is not disputed.

This Court has held in numerous decisions that when the material facts are undisputed and only one inference may be drawn from them by reasonable minds, the questions of negligence and contributory negligence are questions of law for the court. *Daugherty* v. *Baltimore and Ohio Railroad Company*, 135 W. Va. 688, 64 S. E. 2d 231; *Moore* v. *Skyline Cab*, 134 W. Va. 121, 59 S. E. 2d 437;

*Gilkerson* v. *Baltimore and Ohio Railroad Company,* 129
W. Va. 649, 41 S. E. 2d 188; *Divita* v. *Atlantic Trucking
Company,* 129 W. Va. 267, 40 S. E. 2d 324; *Cooper* v.
*Prichard Motor Company,* 128 W. Va. 312, 36 S. E. 2d
405; *Yuncke* v. *Welker,* 128 W. Va. 299, 36 S. E. 2d 410;
*Taylor* v. *City of Huntington,* 126 W. Va. 732, 30 S. E. 2d
14; *Wood* v. *Shrewsbury,* 117 W. Va. 569, 186 S. E. 294;
*Barron* v. *Baltimore and Ohio Railroad Company,* 116
W. Va. 21, 178 S. E. 277; *Linville* v. *Chesapeake and Ohio
Railway Company,* 115 W. Va. 610, 177 S. E. 538; *Craft*
v. *Fordson Coal Company,* 114 W. Va. 295, 171 S. E. 886;
*Jackson* v. *Chesapeake and Ohio Railway Company,* 110
W. Va. 568, 159 S. E. 517; *Boggess* v. *Monongahela West
Penn Public Service Company,* 107 W. Va. 88, 147 S. E.
480; *McLeod* v. *Charleston Laundry Company,* 106 W.
Va. 361, 145 S. E. 756; *Coleman* v. *Norfolk and Western
Railway Company,* 100 W. Va. 679, 131 S. E. 563; *Krodel*
v. *Baltimore and Ohio Railroad Company,* 99 W. Va. 374,
128 S. E. 824; *Jameson* v. *Norfolk and Western Railway
Company,* 97 W. Va. 119, 124 S. E. 491; *Cavendish* v.
*Chesapeake and Ohio Railway Company,* 95 W. Va. 490,
121 S. E. 498; *Daniels* v. *Chesapeake and Ohio Railway
Company,* 94 W. Va. 56, 117 S. E. 695; *Reilly* v. *Nicoll,*
72 W. Va. 189, 77 S. E. 897, 47 L. R. A., N. S., 1199;
*Ketterman* v. *Dry Fork Railroad Company,* 48 W. Va.
606, 37 S. E. 683. In *Krodel* v. *Baltimore and Ohio Rail-
road Company,* 99 W. Va. 374, 128 S. E. 824, in which
the plaintiff was injured by the defendant while driving
her automobile across its tracks at a highway in the city
of Point Pleasant, this Court held in point 5 of the sylla-
bus that "Where the facts which control are not disputed
and are such that reasonable minds can draw but one con-
clusion from them, the question of contributory negli-
gence barring recovery is one of law for the court." See
also *Daugherty* v. *Baltimore and Ohio Railroad Company,*
135 W. Va. 688, 64 S. E. 2d 231; *Gray* v. *Norfolk and
Western Railway Company,* 99 W. Va. 575, 130 S. E.
139; *Robertson* v. *Monongahela Power and Railway Com-
pany,* 99 W. Va. 356, 128 S. E. 829; *Jameson* v. *Norfolk
and Western Railway Company,* 97 W. Va. 119, 124 S. E.

491; *Cavendish* v. *Chesapeake and Ohio Railway Company*, 95 W. Va. 490, 121 S. E. 498; *Robinson* v. *Chesapeake and Ohio Railway Company*, 90 W. Va. 411, 110 S. E. 870. As the contribuotry negligence of Ray Workman, as a matter of law, is established by evidence which is undisputed, the circuit court should have sustained the motion of the defendant, made at the conclusion of the evidence, to strike the evidence offered by the plaintiff and direct a verdict for the defendant. Its refusal to do so constituted reversible error.

The testimony of Brumfield, a witness produced by the plaintiff, of the admission of which the defendant complains, should have been excluded by the circuit court. It was too indefinite to justify the obviously intended inference that the defendant or some of his companions when they were at the county jail drank the whisky which the witness said he had seen. Any such inference would be purely speculative and conjectural. Even if some of the companions of the defendant had admitted that they drank the whisky, their action in drinking it would not be material evidence of negligence upon the part of the defendant who, according to the undisputed testimony of each of them on that subject, did not drink any of it. Though the evidence should have been rejected its admission, in view of the positive testimony of the defendant, two of his companions, and another witness, that there was no bottle of whisky at the place where Brumfield stated he saw it, and that none of them saw Brumfield at the jail on the occasion in question, renders the testimony complained of harmless error which does not warrant a reversal of the judgment.

The testimony of Gay Brewster and Hazel Blankenship, witnesses offered by the defendant, concerning the manner in which Ray Workman drove his automobile during the afternoon and the evening of the day of the collision during which time he drank beer with them or in their presence and the testimony of Hazel Blankenship that Ray Workman, during that time, drank whisky from a

bottle in his possession, all of which was excluded, should have been admitted. The testimony relative to the way in which he drove the automobile was material in determining whether he was under the influence of intoxicating liquor at or immediately before the collision, and for that reason it should have been admitted. The testimony that Ray Workman drank whisky, during the period indicated, was admissible, as was the evidence admitted by the circuit court that he drank beer at the times indicated, for the purpose of determining his condition when and immediately before the collision occurred; and the refusal of the circuit court to admit the excluded evidence was reversible error.

Concerning the alleged improper and prejudicial remarks made by one of the attorneys for the plaintiff in his concluding argument to the jury, complained of by the defendant, there was no stenographic report or verbatim transcript of his statements while addressing the jury. For that reason the exact statements actually made during the argument are not shown by the record. Instead it contains only a statement by the attorney for the defendant of the substance of the objectionable portions based upon his notes made during the course of the argument. The statement was not agreed to or accepted as correct by the attorneys for the plaintiff and its accuracy was challenged by them. An affidavit of the defendant, which was filed with his petition for a writ of error from this Court, and which is not a part of the record, contains practically the same statement of the substance of the remarks of which the defendant complains. After the circuit court had considered the objections of the defendant to the particular portions of the argument, it gave, without objection by either party, this instruction: "Gentlemen of the jury, throughout the concluding argument of counsel for the plaintiff there were some objections made. The court refrained from ruling on those objections at that time, or some of them, but you are now instructed that the argument of the case is of necessity the opinion of the attorney presenting the argument. He

sums up the evidence in his own language, draws inferences pointing to his own theories of the case. You may consider the argument in this light, but your oath binds you to judge the case on the evidence and the instructions of the court." As the exact remarks actually made during the argument are not incorporated in the bill of exceptions certified in this case and in consequence are not a part of the record, they can not be considered by this Court, and the action of the circuit court in overruling the motion of the defendant to declare a mistrial and his motion to set aside the verdict and grant a new trial, on the ground that such remarks were prejudicial to the defendant, will not be reviewed or disturbed on this writ of error.

Remarks of an attorney for one of the parties in an action at law, made during his argument to the jury, which are objected to by the opposite party but which are not made a part of the record, will not be considered, and the action of the trial court in denying motions of the opposite party to declare a mistrial and to set aside the verdict, on the ground that such remarks were prejudicial, will not be reviewed or disturbed by an appellate court upon writ of error.

Because of the foregoing errors committed by the circuit court, the judgment is reversed, the verdict is set aside, and this case is remanded to that court for a new trial which is here awarded the defendant.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*